# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

| | |
|---|---|
| MICHELLE COCHRAN,<br>            Plaintiff-Appellant,<br>            v.<br>SECURITIES AND EXCHANGE<br>COMMISSION; JAY CLAYTON, in<br>his official capacity as Chairman of<br>the U.S. Securities and Exchange<br>Commission; WILLIAM P. BARR,<br>U.S. ATTORNEY GENERAL, in his<br>official capacity,<br>            Defendants-Appellees. | No. 19-10396 |

## APPELLANT'S OPPOSED MOTION FOR INJUNCTION PENDING APPEAL

Pursuant to Rule 8(a)(2) of the Federal Rules of Appellate Procedure,

Appellant Michelle Cochran moves to enjoin the Securities and Exchange

Commission from prosecuting its administrative enforcement proceeding while her

appeal is pending before this Court. Appellees oppose this motion.

This case arises out of the SEC's effort to subject Ms. Cochran to a second

unconstitutional enforcement proceeding after the Supreme Court concluded in

*Lucia v. SEC,* 138 S. Ct. 2044 (2018), that the administrative law judge (ALJ) who

presided over her first proceeding was appointed in violation of Article II. She

filed this lawsuit in the United States District Court for the Northern District of

Texas on January 18, 2019 and a motion for preliminary injunction soon thereafter.

She contends that the second enforcement proceeding against her is also void

because her new ALJ is unconstitutionally insulated from removal by the President

in violation of Article II. After *Lucia*, that conclusion follows as a matter of course under the Supreme Court's previous decision in *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ("*FEF*")—a point asserted by the U.S. Solicitor General in *Lucia*.

On March 25, 2019, the district court denied Ms. Cochran's motion for preliminary injunction and dismissed her case for lack of subject- matter jurisdiction. Ms. Cochran timely appealed to this Court. She filed her opening brief on June 10, 2019. The government responded on August 9, 2019.

Ms. Cochran did not seek an injunction pending appeal upon dismissal, because the administrative law judge in her enforcement proceeding was, at the time, considering a motion to dismiss or stay the enforcement proceeding that in effect suspended the proceeding. On July 23, 2019, however, the ALJ denied Ms. Cochran's motion and directed the parties to proceed administratively meaning that the very constitutional harm Ms. Cochran seeks to prevent in this lawsuit is set to begin soon.  Because it is impracticable for Ms. Cochran to first seek an injunction pending appeal in the district court, this motion falls within the exception described in Rule 8(2)(A)(i) and is appropriately brought in this Court in the first instance.

## FACTS AND PROCEDURAL HISTORY

Ms. Cochran, a licensed CPA, is the subject of an administrative enforcement proceeding the SEC initiated on April 26, 2016 against her, the firm

she formerly worked for, its founder (who settled with the SEC), and one other accountant at the firm. ROA.137-39. The SEC claimed that the firm had violated the Securities Exchange Act of 1934 by failing to comply with auditing standards in reviews and audits it had performed between 2010 and 2013 and that Ms. Cochran had aided and abetted these violations before her resignation from the firm three years earlier. ROA.144-51, 153-55. After a hearing on October 24, 2016, the ALJ ruled in the SEC's favor on most of its claims against Ms. Cochran, recommending that she be fined $22,500 and banned from practicing as an accountant before the SEC for five years. ROA.139.

Before Ms. Cochran's matter concluded, the Supreme Court issued its decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018) holding that SEC ALJs are "Officers of the United States" who must be appointed by the President or the Head of a Department, as the Appointments Clause requires. *See id.* at 2050.

In that proceeding, the U.S. Solicitor General, on behalf of the government, *agreed* with Mr. Lucia that SEC ALJs were unconstitutionally appointed. *Id.* at 2050. The government went a step further, however, and argued that the status of ALJs as inferior officers meant they were also unconstitutionally protected from removal. The government recognized that *FEF*'s holding—that officers of the United States may not be insulated from presidential control by more than one layer of tenure protection—invalidated the SEC scheme which "provides for at

least two, and potentially three, levels of protection against presidential removal authority." Brief for Respondent, *Lucia v. SEC*, at 20-21, 138 S. Ct. 2044 (2018) (No. 17-130) [hereinafter, Gov't Cert. Pet. Br. in *Lucia*]. "It is critically important," argued the government, that the Court address the removal issue in *Lucia*. *Id.* at 21. "Addressing that issue now will avoid needlessly prolonging the period of uncertainty and turmoil caused by litigation of these issues." *Id.* In its merits brief, the government argued, implausibly,[1] that the relevant statutes could be construed to avoid the removal problem, but recognized that absent such a construction, the ALJs' tenure protections violated Article II. *See* Brief for Resp't Supporting Petitioner, *Lucia v. SEC*, at 53, 138 S. Ct. 2044 (2018) (No. 17-130). The Supreme Court did not reach the removal question in *Lucia. Id.* at 2050 n.1.

---

[1] The SEC's proposed "solution" advanced in this case would require judicial excision of removal protections for SEC ALJs. See Appellee's Br. at III., pp. 30-32 (proposing judicial rewriting of the meaning of "good cause" for removal of ALJs under 5 U.S.C. § 7521 and also reinterpreting the role the Merit Systems Protection Board plays in such determinations). This "solution" poses several insurmountable problems for the SEC. First, a court must exercise jurisdiction to perform the statutory surgery, yet the SEC has consistently resisted court jurisdiction at every stage of this proceeding. Second, its proposal does not involve honest statutory *construction*, but freewheeling judicial reformation of all or part of three levels of impermissible tenure protection. It is implausible simply to construe the statute to make the multiple layers of tenure protection go away, and it requires more than mere "construction" to alter this tenure protection scheme. Finally, because the SEC has the power to retry this case directly before the Commission, there is no need for such radical judicial acrobatics. The SEC acts like Article III courts are there to nip and tuck for them like an on-call plastic surgeon ready to clean up after the fact the constitutional mess made by the government's choice of tribunal. That approach is the complete opposite of constitutional avoidance and instead asks the courts to create a kind of constitutional moral hazard.

In response to the *Lucia* decision, the SEC vacated all decisions in pending enforcement matters and assigned them to different ALJs. ROA.167-68. Ms. Cochran's matter was assigned to ALJ Carol Fox Foelak on September 12, 2018. ROA. 172; 178-79. On January 3, 2019, Ms. Cochran filed a motion to dismiss or stay that proceeding. ROA.140.

Ms. Cochran filed the instant action on January 18, 2019, claiming, among other things, that the enforcement proceeding against her is void because ALJ Foelak is unconstitutionally insulated from the President's power to remove her. ROA.6-28. On February 11, 2019, Ms. Cochran moved to enjoin the enforcement proceeding. ROA.101-02.

On March 25, 2019, the district court dismissed Ms. Cochran's case for lack of subject-matter jurisdiction, concluding that Congress intended to channel her claims through the administrative process. ROA.272, 274-78. In so ruling, the court sympathetically noted:

> The court is deeply concerned with the fact that plaintiff already has been subjected to extensive proceedings before an ALJ who was not constitutionally appointed, and contends that the one she must now face for further, undoubtedly extended, proceedings likewise is unconstitutionally appointed. She should not have been put to the stress of the first proceedings, and, if she is correct in her contentions, she again will be put to further proceedings, undoubtedly at considerable expense and stress, before another unconstitutionally appointed administrative law judge.

*Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *2 (N.D. Tex. Mar. 25, 2019) (McBryde, J.)

# ARGUMENT

## I. Moving for an Injunction in the District Court Would Be Impracticable

Under Rule 8(a)(1)(c) of the Federal Rules of Appellate Procedure, a party must ordinarily seek an injunction pending appeal in the first instance in the district court. Parties may move directly in the court of appeals, however, if "moving first in the district court would be impracticable." FED. R. APP. P. 8(2)(A)(i). Moving first in the district court would be impracticable for two reasons.

First, given the district court's conclusion that it lacked subject- matter jurisdiction over Ms. Cochran's claims, it appears that the district court lacks jurisdiction to issue an injunction. *See Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.,* No. CIV.A.3:05CV1098-G, 2005 WL 1923566, at *2 (N.D. Tex. Aug. 11, 2005) (holding that "a court lacks the authority to provide injunctive relief once it has determined that it lacks jurisdiction over the underlying case" and noting that the party could still seek an injunction in the court of appeals under FED. R. APP. P. 8(a)(2)); *accord Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 942 (6th Cir. 2002) ("[w]here a district court dismisses a case for lack of [subject matter] jurisdiction it does not have the authority … to enjoin actions by the parties in the state courts or state administrative proceedings"); *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 294-95 (D.C. Cir. 2000) ("just as a court without jurisdiction over an underlying case has no jurisdiction to

issue a subpoena (unless in aid of determining jurisdiction), or to enforce it by civil contempt ... so too a court without jurisdiction over an underlying case cannot issue a TRO, or enforce it by civil contempt").

Second, moving in the district court first is impracticable because Ms. Cochran's enforcement proceeding is now set to proceed. Given the government's opposition to an injunction, moving first in the district court would needlessly compound the briefing and waste time. *See, e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (it was impracticable to move for an injunction pending appeal in the district court where the law sought to be enjoined would take effect immediately).

## II. Ms. Cochran Is Entitled to an Injunction Staying Her Enforcement Proceeding

To obtain an injunction pending appeal, party must show (1) a likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) that the issuance of an injunction will not substantially injure the other parties to the proceeding; and (4) that the public interest favors the movant. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) ("*Ruiz I*"). When the government is the opposing party, the last two factors merge. *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013) (unpublished).

An injunction pending appeal is "preventive or protective in that it seeks to maintain the status quo" during an appeal. *Ruiz I*, 650 F.2d at 565. Thus, if the

moving party can show that the last three factors weigh heavily in her favor, she need not show a "probability of success on the merits." *Id*. Instead, the movant "need only present a substantial case on the merits" involving "a serious legal question" to satisfy the likelihood of success factor. *Id*.; *see also Campaign for S. Equal. v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014); *Ruiz v. Estelle* (*Ruiz II*), 666 F.2d 854, 856-57 (5th Cir. 1982).

Ms. Cochran can readily meet this standard. Absent an injunction she will suffer irreparable harm because she will be deprived of a right to which the Supreme Court in *Lucia* held she is entitled—only being subjected to a hearing before a constitutionally-authorized ALJ. In stark contrast, the government will suffer no injury from an injunction that will prevent it from wasting the time and expense of conducting another void enforcement proceeding. Having asked the Supreme Court in *Lucia* to resolve the removal issue, the government cannot now claim that it will be harmed by having a pointless enforcement proceeding stayed while that issue is resolved. Indeed, in *Lucia*, the SEC affirmatively sought prompt judicial review of the removal question to avoid such "turmoil." Gov't Cert. Pet. Br. in *Lucia* at 21. Finally, the public interest always weighs in favor of vindicating *constitutional* rights.

Because the latter three factors are heavily tilted in her favor, Ms. Cochran need only show a substantial case on a serious legal question to prevail. The

simplest path to that conclusion is the Supreme Court's decision in *FEF* which establishes that officers of the United States (like SEC ALJs, per *Lucia*) cannot be unconstitutionally insulated by multiple layers of tenure protection. *FEF* also holds that the Exchange Act does not preclude district court jurisdiction over constitutional questions even implicitly. Simply put, after *Lucia*, there is undoubtedly a serious legal question concerning both the ALJ's authority to hear Ms. Cochran's enforcement proceeding and the district court's jurisdiction to address her challenge, and Ms. Cochran can make a substantial case that she is correct on both issues.

### A. Ms. Cochran Has Presented a Substantial Case on the Serious Legal Question of Jurisdiction

District courts have original jurisdiction to resolve constitutional claims that "arise under" the Constitution and laws of the United States. 28 U.S.C. § 1331. While Congress can deprive district courts of jurisdiction over certain types of claims and channel them through the administrative process in the first instance, the Supreme Court will find preclusion only when Congress's intent to do so is "fairly discernible" from the statutory scheme and the claims are of the type that Congress intended to be reviewed through the administrative process. *See FEF,* 561 U.S. 477 at 489; *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). If, however, a plaintiff asserts claims that are wholly collateral to the types of claims the administrative scheme was designed to address, the agency lacks

expertise in dealing with those claims, and the plaintiff would be unable to obtain meaningful review of her claims, the Court recognizes that Congress did not intend to divest courts of jurisdiction. *See FEF*, 561 U.S. at 489. The question, in other words, is not whether Congress intended to confer jurisdiction over federal claims on the district courts, but whether Congress intended to take it away. *Whitman v. Dep't of Transp.*, 547 U.S. 512, 514 (2006).

Under this analysis, Ms. Cochran can make a substantial case for district court jurisdiction. First, the Supreme Court has already held in *FEF* that the *very same statutory scheme* that applies in this case did not preclude district court jurisdiction over a removal claim that is almost identical to Ms. Cochran's. *See* 561 U.S. at 489-90. The Exchange Act's judicial review provision, the Court observed, "does not expressly limit the jurisdiction that other statutes confer on district courts … [n]or does it do so implicitly." *Id*. at 489.

Second, Ms. Cochran's claims are clearly not the type Congress intended to be adjudicated under the SEC's administrative process. As in *FEF*, her removal claim is wholly collateral to the types of claims the SEC and its ALJs are charged with adjudicating under the Exchange Act. Ms. Cochran is not challenging the merits of the SEC's allegations in this action. Instead, just like the petitioners in *FEF*, she objects to the ALJ's very authority to hear her case. *Cf. FEF*, 561 U.S. at 490 (stating that "petitioners object to the Board's existence, not to any of its

auditing standards"). Moreover, because SEC ALJs lack authority to hear constitutional claims, Ms. Cochran's Art. II and due process claims cannot be resolved in the administrative hearing. *See, e.g.*, *Jones Bros.*, *Inc. v. Sec'y of Labor*, 898 F.3d 669, 673–74 (6th Cir. 2018).

Also, as in *FEF*, Ms. Cochran's removal claim is outside the SEC's expertise. *See* 561 U.S. at 491. The statutory scheme provides that SEC ALJs may decide cases under the securities laws, and those laws alone. Indeed, in stark contrast to the Supreme Court's holding in *Lucia* and the government's position on the appointments and removal issues in that case, the SEC and its ALJs have erroneously maintained for several years that its ALJs are not inferior officers subject to the Appointments Clause and present no removal problems. *See, e.g.*, *In the Matter of Timbervest, LLC, Joel Barth Shapiro, Walter William Anthony Boden, III, Donald David Zell, Jr., & Gordon Jones II*, Release No. 4197, 2015 WL 5472520 at*23-28 (Sept. 17, 2015) (rejecting appointments and removal challenges to ALJ). ALJs also cannot be expected to rule on the propriety of their own tenure protections. Were they to do so, they would essentially be acting as judges in their own cases in fundamental violation of the rule of law.

Nor can Ms. Cochran obtain meaningful judicial review of her removal claim during or after the enforcement proceeding, because having to appear before an ALJ who lacks the authority to preside over her case is the very harm she seeks

to avoid in this action. *See, e.g.*, *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1055–56 (5th Cir. 1997) (finding irreparable harm where plaintiff had to submit to a hearing that violated her due process rights); *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) (finding irreparable injury where plaintiff was forced to submit to an unconstitutional hearing). The removal issue is not some hypothetical claim that Ms. Cochran tossed out to complicate the SEC's enforcement proceeding against her. It is a fundamental claim that the *government* in *Lucia* admitted is both valid and critical to resolve.

This issue is not a matter only of time and expense, but of constitutional injury. Under *Lucia*, Ms. Cochran is constitutionally entitled to only be subjected to a hearing before a properly authorized ALJ. *See* 138 S. Ct. at 2055. If she must first submit to an invalid hearing, the right *Lucia* recognized is nugatory. That is true even though Ms. Cochran may appeal an adverse ruling to a circuit court under 15 U.S.C. § 78y, because circuit court review after the fact cannot give her back rights to which she is constitutionally entitled *now*. She is therefore in the same position as the petitioners in *FEF*, who lacked any meaningful way to obtain review of their "object[ion] to the Board's existence" after the fact. 561 U.S. at 490. Further, she will have had to twice lay out her entire defense in invalid proceedings, the effect of which will be to greatly enhance the SEC's ability to advantageously prosecute a future valid proceeding. Surely forcing a citizen to

reveal her defense strategy in serial, to-be-voided hearings, raises due process concerns. *See, e.g., Commonwealth v. G.F.*, 479 Mass. 180 (2018) (due process would not permit indefinite number of retrials.)

The SEC cannot invoke Congressional intent to justify its referral of Ms. Cochran's proceeding to an unconstitutional ALJ after *Lucia* and its clear implications for the removal issue. While the Exchange Act permits the SEC to institute administrative proceedings to enforce the securities laws, it leaves up to the SEC whether to refer such proceedings to ALJs, to preside over proceedings itself, or to bring actions in district court. *See* 15 U.S.C. § 78d-1. The SEC is not entitled to ignore the implications of *Lucia* and the government's own position in the case. When it nevertheless tries to do so, the courts have jurisdiction to hear constitutional challenges to its actions. *See, e.g.*, *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 493-94, 497 (1991) (finding district court jurisdiction over broad pattern and practice due process challenge to INS amnesty determination procedures); *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 237-38 (1968) (finding district court jurisdiction to hear a challenge to a "basically lawless" denial of conscientious objector status).

**B. The *SEC ALJ Cases* Do Not Alter the Supreme Court's Holding in *FEF***

Appellant recognizes that five other circuits have held that district courts lack subject-matter jurisdiction in similar challenges to SEC enforcement

proceedings. *See Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016; *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015). However, those cases are distinguishable or wrongly decided for several reasons.

First, all of these decisions pre-date *Lucia*, when it became unmistakably clear that as federal officers, the SEC's ALJs lack the authority to hear Ms. Cochran's claim. Second, all the circuit decisions relied on the Supreme Court's decisions in *Thunder Basin* and *Elgin v. Dep't of the Treasury*, 567 U.S. 1 (2012), to the exclusion of *FEF*, which is the only *Supreme Court* case involving both the same statutory scheme and the same claim at issue in this case. Despite *FEF*'s contrary holding directly on point, the circuit decisions concluded that the Exchange Act in fact does display an intent to preclude jurisdiction. *See Bennett*, 844 F.3d at 182; *Hill*, 825 F.3d at 1237; *Tilton*, 824 F.3d at 299; *Jarkesy*, 803 F.3d at 16–17; *Bebo*, 799 F.3d at 775. Their reliance on *Thunder Basin* and *Elgin* is misplaced because, unlike here, both cases involved claims that turned on matters of statutory interpretation or involved the same factual inquiries that the agencies typically addressed supporting a conclusion that Congress intended the claims at issue to be adjudicated within the statutory scheme. *See Thunder Basin*, 510 U.S. at 214–15; *Elgin*, 567 U.S. at 12-15, 22-23.

Third, the circuit decisions essentially changed the Supreme Court's jurisdictional test which requires a court to consider *three* factors under *Thunder Basin*, specifically whether 1) the statutory scheme provides meaningful judicial review; 2) the constitutional issues are wholly collateral to ALJ adjudication; and 3) the questions to be determined fall entirely outside agency expertise.

The cases upon which the SEC relies placed almost all of the weight on the "meaningful judicial review" prong even though *Thunder Basin* itself does not speak to the question of weight and which factors, if any, can be ignored contrary to the relevant Supreme Court cases. *See Bennett*, 844 F.3d at 183 n. 7 (stating that "[w]e agree with our sister circuits to have addressed the matter that meaningful judicial review is the most important factor in the *Thunder Basin* analysis" (citations omitted)). These circuit opinions essentially jettison one or both of the "wholly collateral" and "agency expertise" tests, which they admit are "closer questions" (*Tilton*, 824 F.3d at 282) or "not free from ambiguity" (*Bennett*, 844 F.3d at 186) or "do not cut strongly either way" (*Hill*, at 1250).

*All* of the circuit decisions also conflate *eventual* judicial review with "meaningful" judicial review, an error which strips the meaning out of meaningful. The dissent in *Tilton* made just this point: "[W]hile there may be review, it cannot be considered truly 'meaningful' at that point." *Tilton*, 824 F.3d at 298 (Droney, J.). Indeed, had the Second Circuit correctly decided the jurisdictional and merits

questions, it would have spared Lynn Tilton an unconstitutional proceeding. *Tilton*'s dissent proved both prophetic and worthy of emulation.

   *Tilton*'s dissent is not alone. Three district court decisions have likewise concluded that jurisdiction exists in similar cases. *Gray Fin. Grp., Inc. v. SEC*, 166 F. Supp. 3d 1335 (N.D. Ga. 2015) (May, J.); *Hill v. SEC*, 114 F. Supp. 3d 1297 (N.D. Ga. 2015) (May, J.); (*Hill* and *Gray* both vacated by 825 F.3d 1236); *Duka v. SEC*, 103 F. Supp. 3d 382, 389-92 (S.D.N.Y. 2015) (Berman, J.) (abrogated by *Tilton*, 824 F.3d 276). While these opinions are obviously not precedential, they do support the conclusion that the jurisdictional issue in this case is both serious and one on which Ms. Cochran can make a substantial case that she is correct.

   Finally, this Court's decision in *Bank of La. v. FDIC*, 919 F.3d 916 (5th Cir. 2019), is distinguishable. That case involved a different statutory scheme that, unlike the Exchange Act, contained a broad and explicit jurisdictional bar that the Fifth Circuit had previously held "evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention." *Id*. at 920 (internal citations and quotation marks omitted). Indeed, "so robust" was the statutory bar that the FDIC argued the Court should decline to analyze the three *Thunder Basin* factors entirely. *Id*. at 924. The Court nevertheless thought it "prudent to cycle through the *Thunder Basin* factors, as did the district court." *Id*. at 925. The statute construed in *Bank of Louisiana* expressly provided that "no court shall have

jurisdiction to affect by injunction" the FDIC proceedings. 12 U.S.C. § 1818(i)(1). By contrast, the securities laws in this case have no such explicit bar at all.

Quite to the contrary, the SEC is permitted, if not obligated, to bring such actions in the district courts of the United States. *See* Exchange Act, 15 U.S.C. § 78aa: "The district courts of the United States … shall have *exclusive* jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or [the] rules or regulations thereunder … ." (emphasis added). The SEC is similarly authorized by 15 U.S.C. § 78u(d)(3)(A) to bring federal enforcement actions in federal court, and the text of 15 U.S.C. § 78y(a)(1) is explicitly permissive, not mandatory—an aggrieved litigant "may" seek post-agency review of a final order in a court of appeals. Crucially, § 78y(a)(3) makes clear that appellate court jurisdiction becomes exclusive *only* after the SEC issues a "final order," *only* if an aggrieved litigant chooses to invoke the circuit court review, and even then *only* when the SEC files its administrative record with the court. Finally, 15 U.S.C. § 78bb(a)(2) explicitly preserves "any and all" other avenues of relief: "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity."

These statutory provisions, read together, make it impossible to infer any intent by Congress to limit, much less to divest, district courts of jurisdiction under

28 U.S.C.§ 1331 to adjudicate constitutional questions raised well before any final order could ever be issued. Thus, *Bank of Louisiana* is wholly inapposite and fails to provide even persuasive authority to deny jurisdiction.

Additionally, the claims the court evaluated in *Bank of Louisiana* were analogous to those in *Thunder Basin* and *Elgin* and entirely different from Ms. Cochran's constitutional removal claim. *See* 919 F.3d at 927-28 (stating that "[t]he only argument the Bank seriously presses on appeal is that the ALJ 'barred [it] from developing the factual record necessary' to support its constitutional claims" and that "[t]he Bank's constitutional claims arise directly from alleged irregularities in the agency enforcement proceedings"). By contrast, here the power of the ALJ to preside at all is at stake, and the Supreme Court has already ruled that more than one layer of tenure protection is impermissible. *FEF*, at 492.

## C.    Absent an Injunction, Ms. Cochran Will Suffer Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also Valley*, 118 F.3d at 1055-56; 11A *Wright & Miller, Fed. Pract. & Proc. Civ.* § 2948.1 (3d ed. 2018) ("When an alleged deprivation of a constitutional right is involved … most courts" require no further showing of irreparable injury.).

*Lucia* establishes that Ms. Cochran has a right to a hearing before a constitutionally authorized ALJ. *See* 138 S. Ct. at 2055. The Court's holding reflects the principle that individuals are entitled to invoke the protections of structural constitutional provisions such as the separation of powers, which "serves not only to make Government accountable but also to secure individual liberty." *Boumediene v. Bush*, 553 U.S. 723, 742 (2008); *see also Bond v. United States,* 564 U.S. 211, 222 (2011) (recognizing "an injured person's standing to object to a violation of a constitutional principle that allocates power within government"); *FEF*, 561 U.S. at 513 ("[Petitioners] are entitled to declaratory relief sufficient to ensure that the … standards to which they are subject will be enforced only by a constitutional agency accountable to the Executive.").

If Ms. Cochran is forced to submit to yet another unconstitutional enforcement proceeding, she will, for the second time, lose the right to a constitutional tribunal, which not only constitutes irreparable harm, *see Valley*, 118 F.3d at 1056; *United Church*, 689 F.2d at 701, but also makes a mockery of *Lucia*'s holding that SEC ALJs must comply with Article II.

### D.     The Balance of Equities Heavily Favors an Injunction

While Ms. Cochran will suffer irreparable harm if she is forced to undergo yet another unconstitutional enforcement proceeding, the SEC will suffer no harm if the proceeding is enjoined. The government urged the Court in *Lucia* to address

the problem in order to "avoid needlessly prolonging the period of uncertainty and turmoil caused by litigation of these issues." Gov't Cert. Pet. Br. in *Lucia* at 21. The SEC can have no interest in compounding litigation by pursuing yet another constitutionally infirm enforcement proceeding. The SEC has known about the removal problem since at least November 29, 2017, when the government filed its brief supporting certiorari in *Lucia*. The Commission could have brought an action against Ms. Cochran in district court or presided over her matter itself, as the Supreme Court noted in *Lucia*. 138 S. Ct. at 2055 n. 6. Having decided instead to assign the enforcement proceeding to a constitutionally defective ALJ, the SEC should not now be heard to complain. A delayed enforcement proceeding causes no harm at all on a constitutional issue that the government itself argued was "critically important" to address promptly. *See* Gov't Cert. Pet. Br. in *Lucia* at 21.

Finally, the public interest always favors the enforcement of the Constitution. *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[I]t may be assumed that the Constitution is the ultimate expression of the public interest.") (citation omitted); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 298 (5th Cir. 2012); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

# CONCLUSION

For the foregoing reasons, this Court should enjoin Ms. Cochran's

administrative enforcement proceeding pending the outcome of this appeal.

August 16, 2019

Respectfully submitted,

*/s/ Margaret A. Little*
**Margaret A. Little**
**Caleb Kruckenberg**
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5210

**Karen Cook**
Karen Cook, PLLC
1717 McKinney Avenue
Suite 700
Dallas, TX 75202
Telephone: 214-593-6429

*Attorneys for Michelle Cochran*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record for Appellant Michelle Cochran certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant** | **Appellees** |
| --- | --- |
| Michelle Cochran | Securities and Exchange Commission; Jay Clayton, in his official capacity as Chairman of the U.S. Securities and Exchange Commission; William Barr, U.S. Attorney General, in his official capacity. |

| **Counsel for Appellant** | **Counsel for Appellees** |
| --- | --- |
| Margaret A. Little<br>Caleb Kruckenberg<br>New Civil Liberties Alliance<br>1225 19th St. NW, Suite 450<br>Washington, DC 20036<br>Telephone: 202-869-5210 | Joshua Marc Salzman<br>U.S. Department of Justice<br>Civil Division, Appellate Section<br>Room 7258<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530 |
| Karen Cook<br>Karen Cook, PLLC<br>1717 McKinney Avenue<br>Suite 700<br>Dallas, TX 75202<br>Telephone: 214-593-6429 | Rebecca Cutri-Kohart<br>U.S. Department of Justice<br>Civil Division<br>P.O. Box 883<br>Washington, DC 20044 |

Brian Walters
U.S. Attorney's Office
Northern District of Texas
Room 300
1100 Commerce Street
Dallas, TX 75242


*/s/Margaret A. Little*
Counsel of Record for Appellant

## CERTIFICATE OF CONFERENCE

I hereby certify that on August 2 and August 4, 2019 I corresponded with opposing counsel concerning their position on this motion. Opposing counsel informed me that the Appellees oppose this motion and intend to file a response.

*/s/Margaret A. Little*
Counsel of Record for Appellant

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I hereby certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii). It is printed in Times New Roman, a proportionately spaced font, and includes 5041 words, excluding items enumerated in Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Fifth Circuit Rule 32.2. I relied on my word processor, Microsoft Word, to obtain the count.

*/s/ Margaret A. Little*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2019, an electronic copy of the foregoing motion was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/EFC filing system and that service will be accomplished using the appellate CM/ECF system.

*/s/ Margaret A. Little*