**REVISED 8/12/2020**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-10396

United States Court of Appeals
Fifth Circuit

**FILED**

August 11, 2020

Lyle W. Cayce
Clerk

MICHELLE COCHRAN,

Plaintiff - Appellant

v.

SECURITIES AND EXCHANGE COMMISSION; JAY CLAYTON, in his
official capacity as Chairman of the U.S. Securities and Exchange
Commission; WILLIAM P. BARR, U. S. ATTORNEY GENERAL, in his
Official Capacity,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-66

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Judicial review of Securities and Exchange Commission proceedings lies
in the courts of appeals after the agency rules. 15 U.S.C. § 78y. This appeal
asks whether a party may nonetheless raise a constitutional challenge to an
SEC enforcement action in federal district court before the agency proceeding
ends. All five courts of appeals to address the question have held that a party
cannot circumvent the SEC judicial review statute that way. *Bennett v. SEC*,

No. 19-10396

844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015). Just last year we held the same for the Federal Deposit Insurance Corporation's judicial review provision in an appeal raising the separation-of-powers claim asserted in this case. *See Bank of La. v. FDIC*, 919 F.3d 916 (5th Cir. 2019). Bound by *Bank of Louisiana* and in accord with the unanimous view of other circuits, we hold that the statutory review scheme is the exclusive path for asserting a constitutional challenge to SEC proceedings.

## I.

The SEC brought an enforcement action against Michelle Cochran. It alleged that Cochran, a CPA, failed to comply with auditing standards in violation of the Securities Exchange Act. Under that law, the SEC can initiate enforcement proceedings in district court, before the Commission, or before an administrative law judge. 15 U.S.C. §§ 78d-1(a), 78u(d). The SEC elected to proceed before an ALJ.

While Cochran's case was pending, the Supreme Court held that SEC ALJs are Officers of the United States whom the President, a court of law, or a department head must appoint. *Lucia v. SEC*, 138 S. Ct. 2044, 2049, 2051 (2018). Before *Lucia*, SEC staff selected ALJs. *Id.* at 2050. Following *Lucia*, the SEC reassigned all adjudications to judges whose appointments had, by then, been ratified by the Commission.

After the new ALJ took over Cochran's case, Cochran filed this lawsuit in district court. She sought to enjoin the enforcement action because although there is no longer a problem with how ALJs are appointed, Cochran contends there is still a problem with how they can be removed. The constitutional problem, in her view, is that the ALJs enjoy multiple layers of "for cause" removal protection. *See Free Enter. Fund v. Pub. Co. Accounting Oversight*

*Bd.*, 561 U.S. 477, 484 (2010) (holding unconstitutional removal protections for officers of the Public Company Accounting Oversight Board). Cochran also alleged a due process violation on the ground that ALJs do not follow SEC rules and procedures.

The district court dismissed for lack of subject jurisdiction. It concluded that 15 U.S.C. § 78y provides the exclusive means for asserting these claims before an Article III court—in the court of appeals after a final order issues. After Cochran appealed, a panel of this court enjoined the SEC proceeding pending this court's decision.

## II.

This appeal is not about whether Cochran will have the opportunity to press her separation-of-powers claim. She will. It instead asks: Where and when? As these are questions of federal court jurisdiction, Congress gets to answer them. *Sheldon v. Sill*, 49 U.S. 441, 442 (1850) ("[T]he disposal of the judicial power, except in a few special cases, belongs to Congress; and the courts cannot exercise jurisdiction in every case to which the judicial power extends, without the intervention of Congress, who are not bound to enlarge the jurisdiction of the Federal courts to every subject which the Constitution might warrant.").

Cochran contends that Congress supplied the answer to the jurisdictional issue in the general federal question statute, which allows district courts to hear cases "arising under the Constitution." 18 U.S.C. § 1331. The SEC counters that the specific review provision for SEC enforcement actions displaces the general jurisdiction statute. Section 78y states:

> A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

15 U.S.C. § 78y(a)(1).

Congress may strip federal courts of jurisdiction explicitly or implicitly. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994). The SEC argues that section 78y, by channeling review directly to the court of appeals, does the latter. This type of judicial review scheme divests district courts of jurisdiction if the statute evinces a "fairly discernible" intent to limit jurisdiction, and the claims at issue are the type that Congress intended the agency to review. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9–10 (2012).

## A.

The text and structure of the Securities Exchange Act reveal the necessary intent to limit district court jurisdiction. *Id.* Starting with the text, the grant of jurisdiction to the aggrieved person's local circuit or the D.C. Circuit only after issuance of a final order implies that other courts lack jurisdiction. *See Jarkesy*, 803 F.3d at 16; *Free Enter.*, 561 U.S. at 489 ("Generally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) ("[S]pecification of the one implies exclusion of the other. . . ."). That suggestion moves into the realm of certainty (which the caselaw does not even require) when one considers another provision declaring that the court of appeals has "exclusive" jurisdiction "to affirm or modify and enforce or to set aside the order in whole or in part." 15 U.S.C. § 78y(a)(3); *Jarkesy*, 803 F.3d at 16. Other provisions set forth exhaustion requirements, the standard of review the court of appeals is to follow, and the process for remanding to "adduce additional evidence." 15 U.S.C. §§ 78y(c)(1); (a)(4); (a)(5); *Jarkesy*, 803 F.3d at 16. It would undermine those rules if a party could seek review in a district court not constrained by those rules. This comprehensive scheme for a postadjudication appeal straight

to the court of appeals makes it "fairly discernible that Congress intended to deny . . . an additional avenue of review in district court." *Elgin*, 567 U.S. at 12.

The structure of the SEC enforcement scheme provides further evidence for that conclusion. As mentioned, the SEC has three options when pursuing a case. The Commission may adjudicate the case itself, pursue charges before an ALJ, or file suit in district court. The agency's statutory power to select the forum would be illusory if defendants could file an action in district court. *Jarkesy,* 803 F.3d at 17; *Tilton*, 824 F.3d at 282 n.3. And the provision authorizing the SEC to seek injunctive relief in district courts, 15 U.S.C. § 78u(d)(1), would be unnecessary if district courts retained residual jurisdiction over SEC matters.

We thus conclude that the SEC judicial review scheme exhibits a general intent to deprive district courts of subject matter jurisdiction, joining every other circuit that has reached the issue. *Bebo*, 799 F.3d at 768–69; *Jarkesy*, 803 F.3d at 16–17; *Tilton*, 824 F.3d at 281–82; *Hill*, 825 F.3d at 1242–45; *Bennett*, 844 F.3d at 181–82; *see also Bank of La.*, 919 F.3d 916, 923 (5th Cir. 2019) (citing each of the other circuits' cases with approval while analyzing the FDIC judicial review provision).

B.

This general intent to displace district court jurisdiction does not end the matter. We must still assess whether Congress intended to funnel the kind of claim Cochran asserts through the statutory review scheme. *Thunder Basin*, 510 U.S. at 212–16. This is where Cochran pushes back on the dismissal of her complaint, arguing that federal court review of her separation-of-powers claim need not wait for agency adjudication.[1]

---

[1] Because she presents the removal-power claim as her best case for district court jurisdiction, we focus on it in addressing the *Thunder Basin* factors. It follows from our

We assume Congress did not intend a claim to go through a statutory review scheme it created for an agency only when: (1) administrative proceedings would "foreclose all meaningful judicial review"; (2) "the suit is wholly collateral to a statute's review provisions"; and (3) "the claim[] [is] outside the agency's expertise." *Free Enter.*, 561 U.S. at 489. These three factors overlap, but each provides evidence of whether Congress intended district courts or the SEC to get first crack at a claim. *See Jarkesy*, 803 F.3d at 22 (discussing overlap between the first and second factors). Under *Bank of Louisiana*, Cochran cannot prevail under this inquiry.

As we find *Bank of Louisiana* controlling, before marching through its analysis of the three *Thunder Basin* factors we address Cochran's attempts to distinguish it. She first points out that the FDIC review provision provides an even stronger case for displacement of general federal question jurisdiction than does its SEC analogue. That is true; the FDIC statute says "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under [12 U.S.C. §§ 1818, 1831o, or 1831p-1], or to review, modify, suspend, terminate, or set aside any such notice or order." 12 U.S.C. § 1818(i)(1). *Bank of Louisiana* observes that this language might explicitly preclude jurisdiction. 919 F.3d at 922–23. But it then decides to nevertheless resolve the case under the "implicit preclusion analysis," which includes the three *Thunder Basin* factors. *Id.* at 923 ("The parties and the district court addressed the question presented under the implicit preclusion analysis, and we therefore do the same."). When conducting that analysis, last year's decision saw no relevant difference between the FDIC and SEC statutory schemes; it repeatedly found support for its holding in SEC cases from other circuits. *See id.* at 923–930 (quoting *Bennett*, 844 F.3d at 186–87;

conclusion that the district court cannot hear the removal-power claim that it also cannot hear the due process claim which is even more procedurally intertwined with agency action.

*Hill*, 825 F.3d at 1249–51; *Tilton*, 824 F.3d at 286–90; *Jarkesy*, 803 F.3d at 13–14, 16–17, 19–22–23, 28–29; *Bebo*, 799 F.3d at 767, 773).[2]

If the difference in statutes is not a basis for avoiding *Bank of Louisiana,* Cochran contends that her separation-of-powers claim is. On her telling, the bank suing the FDIC was asserting run-of-the-mill due process claims rather than challenging the very authority of ALJs to act. But *Bank of Louisiana* also involved a "separation-of-powers challenge to the ALJ." 919 F.3d at 930. We held that claim should be channeled through the postadjudication review scheme even though it "does not directly implicate the agency's expertise in the way . . . other constitutional claims do." 919 F.3d at 930 (citing *Jarkesy*, 803 F.3d at 28; *Hill*, 825 F.3d at 1250–51; *Tilton*, 824 F.3d at 289).

What was the *Bank of Louisiana* separation-of-powers claim? The same one brought here: a challenge to the constitutional authority of the ALJ. We noted the bank was asserting the same constitutional claims in the district court lawsuit that it had asserted in the agency proceeding. 919 F.3d at 921 (citing *Bank of La.,* FDIC-12-489b, FDIC-12-479k, 2016 WL 9050999, at *11-13 (Nov. 15, 2016). Among those was a claim that the FDIC "ALJ was not properly appointed under the Appointments Clause and the ALJ's tenure protections violate separation of powers principles." *Bank of La.*, 2016 WL 9050999, at *13; *see also* 919 F.3d at 921 (recognizing that the agency rejected the argument that the "ALJ was unconstitutionally appointed"). Indeed, we noted that the appeal of the agency proceeding had to be remanded after the Supreme Court decided *Lucia*—the principal case Cochran relies on for her separation-of-powers claim. *Id.*

---

[2] Even if *Bank of Louisiana*'s analysis of the *Thunder Basin* factors were an alternative holding, it would still bind us. *United States v. Reyes-Contreras*, 910 F.3d 169, 179 n.19 (5th Cir. 2018) (en banc).

As it must, the dissent recognizes that *Bank of Louisiana* twice "mentioned the structural claim." Dissenting Op. at 2. But it then dismisses the opinion as addressing the separation-of-powers claim only "in passing." *Id*. That is not how most would characterize devoting an entire paragraph to deciding whether the bank's challenge to the ALJ's constitutional authority warranted a different *Thunder Basin* outcome than the other claims.[3] *Bank of La.*, 909 F.3d at 931 (disagreeing with the argument that the lack of agency expertise involved in deciding a separation-of-powers claim means a district court has jurisdiction).[4] Regardless of whether one thinks that discussion was thorough enough, what cannot be denied is that *Bank of Louisiana* recognized the separation-of-powers claim—a *Lucia*-based challenged to the ALJ's very authority to act—and resolved it. 913 F.3d at 921, 931. That is enough to bind us. *Stare decisis* does not require verbosity.

Cochran's attempts to distinguish *Bank of Louisiana* thus flounder. That means a prior panel has already done our *Thunder Basin* work for us. We will nonetheless address each factor, summarizing the answer we provided last year that *stare decisis* requires we follow today.

---

[3] *Bank of Louisiana* spends more time discussing the separation-of-powers claim than this opinion spends specifically discussing the due process claim. *See supra* note 1. Does that mean this decision is not precedent for the due process claim? Allowing judges to decide whether to follow caselaw based on how thoroughly they think it decided an issue would throw *stare decisis* into disarray.

[4] This paragraph rejecting different treatment for the separation-of-powers claim cited other decisions holding that challenges to the constitutional status of ALJs must await judicial review until the end of the enforcement action. 913 F.3d at 931 (citing *Hill*, 825 F.3d at 1239; *Tilton*, 824 F.3d at 289). Circuits have unanimously reached that result in SEC cases raising the identical claim Cochran brings. *Bennett*, 844 F.3d at 178; *Hill*, 825 F.3d at 1239; *Tilton*, 824 F.3d at 279−80; *Bebo*, 799 F.3d at 768. *Bank of Louisiana*'s repeated reliance on those decisions further belies the notion that it somehow gave insufficient consideration to the separation-of-powers claim it expressly resolved.

1.

Meaningful judicial review is available for Cochran's constitutional claims. That opportunity exists when a party can raise its claims to a court of appeals following an adverse agency ruling. *See Elgin*, 567 U.S. at 17 (constitutional claims of bill of attainder and sex discrimination); *Thunder Basin*, 510 U.S. at 215 (due process challenge to Mine Act); *Bank of La.*, 919 F.3d at 925–28 (due process and removal-power challenge to enforcement action). The best illustration of how postadjudication judicial review can vindicate separation-of-powers claims is one of the key cases Cochran relies on: *Lucia v. SEC*. The Supreme Court issued that landmark Appointments Clause ruling in an appeal that followed agency adjudication. *Lucia*, 138 S. Ct. at 2049−50. Cochran's claim can follow the same path.[5]

*Free Enterprise* does not counsel otherwise.[6] As is true for just about every other argument Cochran makes, *Bank of Louisiana* already rejected this one.[7] 919 F.3d at 926–27. As our colleagues explained last year, *Free Enterprise* involved an accounting firm that regulators were investigating but had not yet charged. *Id.* at 926 (discussing *Free Enter.*, 561 U.S. at 489–91).

---

[5] This factor cannot be looked at from the standpoint of someone who prevails before the agency. *But see* Dissenting Op. at 3–4. If that were the inquiry, then this factor would mean nothing. Every type of claim—be it separation of powers, due process, statutory, or something else—will escape federal court review when the charged party wins the enforcement action. This factor thus must be considered from the standpoint of a party who loses before the agency. And because Congress provides postenforcement judicial review when a party loses before the agency, no *Thunder Basin* case involving a pending enforcement action has ever held that there will be "no meaningful judicial review."

[6] Nor does *Seila Law LLC v. CFPB,* 140 S. Ct. 2181 (2020). The successful removal-power claim in this case was raised as a defense to a district court proceeding brought by the agency to enforce a "civil investigative demand." *Id.* at 2194; *see also* 12 U.S.C. § 5562(e)(1) (authorizing the CFPB to "file, in the district court of the United States," a petition to enforce a civil investigative demand). So like *Free Enterprise*, *Seila Law* did not involve an enforcement action.

[7] It is also notable that *Elgin*, in holding that the party to an adjudication had to raise its constitutional claim through the agency-specific review scheme, cited *Free Enterprise* only once and just to lay out the three *Thunder Basin* factors. *Elgin*, 567 U.S. at 15.

The SEC judicial review provision does not provide an avenue for a party to challenge an investigation (as opposed to an actual enforcement proceeding). 15 U.S.C. §§ 78y, 7214(h)(2). Consequently, the firm would have had to "incur a sanction" to get its constitutional claim before a court via the ordinary SEC review scheme. *Bank of La.*, 919 F.3d at 926 (quoting *Free Enter.*, 561 U.S. at 490). Having to "bet the farm . . . by taking the violative action" is not a "'meaningful' avenue" for judicial review, so section 78y does not prevent the target of an investigation from suing in district court. *Free Enter.*, 561 U.S. at 490–91. But Cochran, like the bank that sued the FDIC, is "already embroiled in an enforcement proceeding"; she does "not have to 'bet the farm' to challenge agency action. The farm [is] already on the table." *Bank of La.*, 919 F.3d at 927.

*Bank of Louisiana*'s distinction between an investigation that may never reach an ALJ and a pending adjudication that already has is the same one every court of appeals has made. *See Bennett*, 844 F.3d at 186; *Hill*, 825 F.3d at 1243; *Tilton*, 824 F.3d at 283–84; *Bebo*, 799 F.3d at 774–75; *Jarkesy*, 803 F.3d at 20. *Free Enterprise* does not allow a party to an enforcement action to leapfrog the statutory review scheme. The seemingly anomalous result that a party subject to the less onerous agency action of investigation may run to federal court while a party that has been charged must wait flows directly from the principle that federal court jurisdiction is a matter of statute. Because Congress set forth specific judicial review provisions for SEC proceedings, allowing recourse to the general grant of federal jurisdiction when there is a pending enforcement action would disrupt that scheme. *See Thunder Basin*, 510 U.S. at 207–09. There is no scheme for judicial review of SEC investigations, so falling back on general federal question jurisdiction does not undermine any contrary congressional path.

2.

The second question is whether Cochran's claims are wholly collateral to the SEC review provisions. As we noted in *Bank of Louisiana*, courts analyzing whether a claim is wholly collateral to the administrative scheme have usually asked whether the plaintiff's claim arises as a result of the actions the agency took during the challenged proceedings. 919 F.3d at 928−29. Cochran's challenge—that the official adjudicating her claim is unconstitutionally insulated from executive control—is "inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the [SEC] the power to institute and resolve as an initial matter." *Id.* at 928 (quoting *Jarkesy*, 803 F.3d at 23). In other circuits, that alone would be enough to conclude that her claim is not wholly collateral to the statutory review scheme. *Bennett*, 844 F.3d at 186−87; *Tilton*, 824 F.3d at 287−88.

If we were to adopt a different approach, also asking whether the substance of Cochran's claims is intertwined with the scheme, Cochran has a stronger case. *Id.* Resolution of the separation-of-powers claim will not depend on the record from the adjudication. But even if we were to become the first circuit to conclude that this aspect of the wholly collateral question helped Cochran on this factor, *see id.* (explaining that some circuit courts have suggested this approach though none have adopted it),[8] that would not overcome the other two *Thunder Basin* factors to give the district court jurisdiction in spite of the SEC-specific review provisions. *See Free Enter.*, 561 U.S. at 489−91 (holding that district court had jurisdiction because all three *Thunder Basin* factors favored that result); *Bebo*, 799 F.3d at 774−75 (rejecting

---

[8] *Bank of Louisiana* declined to "decide whether focusing on substance over procedure is the proper way to apply the wholly collateral factor." 919 F.3d at 928. Because it is not does not change the outcome here either, we likewise decline to decide the issue.

district court jurisdiction even after assuming the plaintiff's claims were "wholly collateral" to the scheme).

3.

The third *Thunder Basin* factor appears at first blush to also present a close call. Purely legal questions that are not interpretations of the agency's statute or regulations—like issues of constitutional law—do not generally benefit from agency expertise. *See Thunder Basin*, 510 U.S. at 215. But the Supreme Court's most recent instruction is that we should not just consider whether the agency has expertise with respect to the particular claim the plaintiff wants to resolve in district court. *See Elgin*, 567 U.S. at 23; *Jarkesy*, 803 F.3d at 28 (explaining that *Elgin* "clarified . . . that an agency's relative level of insight into the *merits* of a constitutional question is not determinative" on the agency expertise factor). The benefit of agency expertise should instead be assessed by looking at the overall case, so this factor accounts for the possibility that the agency's resolution of other issues "may obviate the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22–23; *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 n.11 (1980) ("[T]he possibility that Socal's challenge may be mooted in adjudication warrants the requirement that Socal pursue adjudication, not shortcut it.").[9]

The prospect that agency expertise could resolve the case against the agency on a nonconstitutional ground is why *Bank of Louisiana* concluded that this third factor did not support exempting even the separation-of-powers claim from the exclusive review scheme Congress created. *Bank of La.*, 919 F.3d at 930 (citing *Jarkesy*, 803 F.3d at 28; *Hill*, 825 F.3d at 1250–51; *Tilton*, 824 F.3d at 289). That is consistent with the principle that we should reach difficult constitutional claims as a last, rather than first, resort. *Ashwander v.*

---

[9] In taking the position that we should create a split with five other circuits, the dissent does not consider *Elgin* when addressing this factor.

*Tenn. Valley Auth.*, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring). Allowing only separation-of-powers claims to evade the judicial review scheme that Congress created would turn constitutional avoidance on its head. *See Jarkesy*, 803 F.3d at 25.

C.

Cochran and the dissent contend that allowing immediate judicial resolution of her constitutional claims is the more expedient course. But the efficiency of allowing separation-of-powers claims to short-circuit the SEC's statutory review scheme depends on the outcome of the various potential proceedings. To be sure, requiring the adjudication to run its course before we consider her constitutional claim could impose unnecessary costs on Cochran. But the costs an individual may face when required to go through a full trial before appealing legal issues—including consequences like imprisonment— usually give way to larger systemic concerns about piecemeal review. *See, e.g., Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (listing reasons that "a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits"). For example, the general prohibition on interlocutory appeals requires a party to litigate its whole case before challenging a constitutionally deficient trial before us. *See Jarkesy*, 803 F.3d at 26 ("[W]hen a district court denies a federal criminal defendant's pretrial motion, that denial ordinarily is not immediately appealable."). And abstention doctrines often prevent parties from seeking immediate vindication of constitutional rights in federal court. *Jarkesy*, 803 F.3d at 26; (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

Rules against premature judicial intervention recognize that, in many scenarios, piecemeal review will prove less efficient. *See Cobbledick v. United States*, 309 U.S. 323, 325 (1940) (explaining that the final judgment rule "avoid[s] the obstruction of just claims that would come from permitting the

harassment and cost of a succession of separate appeals"). Cochran is viewing efficiency from the lens of her constitutional arguments being winning ones. But what if her claims—and more importantly the claims of other plaintiffs that will follow if we open the gates to early district court adjudication of separation-of-powers challenges to agency proceedings—fail on the merits? Then, instead of the one court Congress authorized, three courts would have devoted time to the agency matter: (1) the district court preadjudication; (2) the court of appeals in its review of the preadjudication challenge, and (3) another court of appeals panel in the traditional postadjudication review. *Cf. Standard Oil*, 449 U.S. at 242 (recognizing that "piecemeal review" prior to the completion of adjudication "is inefficient and upon completion of the agency process might prove to have been unnecessary"). The first two layers of judicial review would have imposed costs on the parties and courts and delayed the agency proceeding. Also problematic is that allowing judicial review both before and after an adjudication would risk review of the same matter in different circuits, a result that would be inefficient, anomalous, and potentially mischievous. *Cf. Elgin*, 567 U.S. at 14 (recognizing that allowing district court jurisdiction over challenges to agency proceedings creates the "potential for inconsistent decisionmaking and duplicative judicial review"); *see also Jarkesy*, 803 F.3d at 30.[10]

Another part of the efficiency calculus is what we have already noted: a Cochran victory before the ALJ would eliminate the need for any judicial review. And even under Cochran's best scenario from an efficiency standpoint,

---

[10] The dissent's split verdict on the jurisdictional questions highlights the piecemeal review that would result if separation-of-powers claims could jump in front of the statutory scheme of agency adjudication followed by review in the court of appeals. Judge Haynes would allow the removal claim to go forward in the district court, followed by an appeal. Meanwhile, judicial review of Cochran's due process claim would have to wait until the agency rules.

in which she wins the district court suit, appellate review would follow. It is not certain that district court litigation, followed by appellate review, would produce a quicker resolution than agency adjudication followed by appellate review. *See Elgin*, 567 U.S. at 14 (recognizing that a "double layer of judicial review" of agency action can be "wasteful and irrational" (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988))).

At the end of the day, however, which system of review is more efficient is beside the point. Congress gets to make that policy decision. As *Bank of Louisiana* and every other circuit to consider this question has held, even when it comes to separation-of-powers claims Congress opted for court involvement only after the end of the agency proceeding.

\* \* \*

The *Thunder Basin* analysis does not show that Congress exempted Cochran's claims from the common path for judicial review of agency action—direct appeal to a court of appeals after the agency rules—that it adopted for the SEC. Cochran may raise her removal-power claim before the ALJ and, if she loses before the agency, in a court of appeals. She may even be able to get her claim all the way to the Supreme Court as Lucia did. But Cochran cannot circumvent the statutory review scheme by litigating it now in a federal trial court.

The judgment is AFFIRMED. The stay of the SEC proceeding is DISSOLVED.

HAYNES, Circuit Judge, dissenting in part:

I disagree with the majority opinion that *Bank of Louisiana v. FDIC*, 919 F.3d 916 (5th Cir. 2019), decided the issue as to the removal proceeding challenge here, and I would conclude that Cochran's claim on this point is not the type over which Congress intended to limit judicial review.[1] Accordingly, I respectfully dissent.

## I.    Whether *Bank of Louisiana* Controls

I do not think that *Bank of Louisiana* controls because it did not address a structural claim. The opinion there did not squarely consider whether a claim concerning the President's removal power should be analyzed differently than other types of constitutional claims. Instead, when it analyzed whether the claims at issue were the type over which Congress intended to limit judicial review, the court analyzed only the due process and equal protection claims. *See Bank of La.*, 919 F.3d at 930 (stating that the Bank's constitutional claims "turned largely on why the agency brought charges"—*i.e.,* the equal protection claim—"and on how the hearing was conducted"—*i.e.,* the due process claim). The district court opinion similarly focused on those issues stating: "The plaintiffs do not question the constitutionality or inherent authority of the FDIC. The plaintiffs do not question the procedures of the FDIC. Instead, the plaintiffs attack the motives underlying the FDIC's decision to initiate the proceedings." *Bank of La. v. FDIC*, No. CV 16-13585, 2017 WL 3849340, at *6 (E.D. La. Jan 13, 2017).

---

[1] By contrast, I think the due process claim is intertwined and, therefore, I concur that the district court lacked jurisdiction over it. Cochran asserts that she has been denied due process because the SEC has failed to comply with the deadlines prescribed in applicable statutes and regulations. As we held in *Bank of Louisiana*, claims alleging "irregularities" during an enforcement proceeding are not wholly collateral, either procedurally or substantively. *See* 919 F.3d at 928–29.

The majority opinion here, however, contends that *Bank of Louisiana* addressed the separation-of-powers claim. Maj. Op. 7. In *Bank of Louisiana*, this court mentioned the structural claim twice in passing: it first noted that the ALJ's opinion addressed, among other things, a separation-of-powers claim and later stated that "the Bank's separation-of-powers challenge to the ALJ does not directly implicate the agency's expertise." *Bank of La.*, 919 F.3d at 926, 930. But our court neither analyzed the separation-of-powers claim nor discussed whether structural claims should be treated differently than other constitutional claims.[2] Indeed, our court never considered whether the structural nature of a claim might bear on the jurisdictional analysis. Importantly, jurisdictional issues addressed *sub silentio* are generally not of the nature that constitutes binding precedent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119 (1984). Because *Bank of Louisiana* was addressing a different statute and failed to address a key point that is relevant to this case, I conclude that it does not mandate the decision here.

## II.    Whether Congress Intended to Limit Judicial Review

I also disagree with the majority opinion's conclusion that Cochran's removal claim is the type over which Congress intended to limit jurisdiction. To make this determination, courts look to the three *Thunder Basin* factors, under which "we presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)).

---

[2] It is not, as the majority opinion contends, a matter of verbosity v. succinctness. It is a matter of whether the issue here was addressed.

A.    **Meaningful Judicial Review**

I conclude that precluding district court jurisdiction would likely foreclose all meaningful judicial review.   There are some differences between this case and *Free Enterprise Fund*, since Cochran need not expose herself to additional liability under the circumstances of this case.   Nonetheless, she must continue to participate in an adjudicative system that may well be constitutionally illegitimate depending on the determination of the removal claim.   As a result, this case is not analogous to *Thunder Basin* or *Elgin v. Department of Treasury*, 567 U.S. 1 (2012).   In those cases, the parties to an administrative proceeding challenged the constitutionality of a substantive statute that gave rise to an administrative action; they did not challenge the constitutional grounding of the agency overseeing the proceedings.   *See Thunder Basin*, 510 U.S. at 203–204 (challenging the Mine Act and its regulations but not the overseeing administrative agency's structure); *Elgin*, 567 U.S. at 6–7 (challenging statutes that require men to register for the draft and make failure to do so a bar from federal employment).   Here, Cochran does not allege that the Exchange Act is unconstitutional; she instead asserts that the ALJ who oversees the proceeding against her enjoys unconstitutional removal protection.

As a result, Cochran finds herself in a lose–lose situation in front of the SEC.   Of course, she loses if the SEC imposes a sanction.   In that case, she (now an aggrieved party) could challenge both the substantive securities determination and the constitutional issues in federal court.   *See* 15 U.S.C. § 78y.   But if she wins in front of the SEC and no sanction is imposed, she will lose the opportunity to have a court consider her now-moot removal challenge, all while having been subject to a potentially unconstitutional proceeding.   *See Tilton v. SEC*, 824 F.3d 276, 290 (2d Cir. 2016) ("[T]he Commission could rule

that the appellants did not violate the [securities laws], in which case the constitutional question would become moot.").

I conclude that cases concerning the President's removal powers (or similar fundamental structural concerns) are different than those where a party to an administrative proceeding argues that the statute they have allegedly violated is unconstitutional. In more typical cases, winning on the statutory claim "obviate[s] the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22–23; *see also FTC v. Standard Oil Co.*, 449 U.S. 232, 244 & n.11 (1980). But more is at stake here. A favorable outcome from Cochran's administrative proceeding would not obviate the need to address her removal challenge; it would instead eliminate any opportunity for her challenge to be heard. I do not think that the law requires Cochran to be subjected to an adjudicative process in front of an officer who may not have constitutional authority to decide her case, leaving her without recourse if she successfully defends her case. *See generally Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S.Ct. 2183, 2197–2207 (2020) (discussing case law on the President's removal power and determining that the CFPB Director's for-cause removal protections violated the Constitution's separation-of-powers doctrine). I do not, at this point, conclude what the correct answer to this challenge is. *Compare Collins v. Mnuchin*, 938 F.3d 553, 588 (5th Cir. 2019) (en banc) (addressing removal issue under HERA), *cert. granted*, 2020 WL 3865248 (U.S. July 9, 2020) (mem.) (Nos. 19-422 & 19-563), *with Humphrey's Ex'r v. United States*, 295 U.S. 602, 629 (1935) (upholding the Federal Trade Commission's structure and rejecting removal-power challenge). But I think the challenge here is relevant. For these reasons, I would hold that precluding jurisdiction could foreclose all meaningful judicial review of Cochran's removal claim.

## B.    Collateral Nature of the Claim

I next consider whether Cochran's removal claim is wholly collateral to the Exchange Act's administrative review scheme.  Case law does not make clear whether courts should focus on the procedural relationship—whether the claim is "inextricably intertwined" with the enforcement proceeding—or the substantive relationship—whether Cochran's claim is "substantively collateral" to the enforcement proceeding.  *Bank of La.*, 919 F.3d at 928.  I would conclude that the removal claim is collateral either way.

Unlike in *Bank of Louisiana*, Cochran's removal claim does not "allege agency misdeeds *during* the enforcement proceedings themselves."  *Id.*  She challenges the structure undergirding the SEC's administrative system, which transcends any particular proceeding.  For this reason, I would conclude that her claim is not intertwined with the merits of the proceedings against her.

Additionally, in *Free Enterprise Fund*, the Court determined that the petitioners' claims were collateral to the administrative proceedings because the petitioners "object[ed] to the Board's existence, not to any of its auditing standards." 561 U.S. at 490.  Cochran's removal claim similarly challenges the ALJs' existence within their current structure.  She does not challenge the securities laws underlying the administrative proceedings.  For this reason, her removal claim is substantively collateral as well.

## C.    Agency Expertise

Finally, on whether Cochran's removal claim is outside the SEC's competence and expertise, *Free Enterprise Fund* is again instructive.  There, the Court determined that the claims at issue were outside the Commission's competence and expertise, specifically because the claims did not call for subject-matter expertise or "technical considerations of agency policy."  *Free Enter. Fund*, 561 U.S. at 491 (brackets and internal quotation marks omitted).  Here too, Cochran's removal claim does not call for administrative expertise,

and she has not asked the court to delve into a fact-bound inquiry or into any issues of securities law. *See id.* Instead, Cochran asks the district court to answer a constitutional question that courts are well positioned to address. Thus, I would conclude that the claim here, like the one in *Free Enterprise Fund*, is outside the SEC's expertise.

In sum, our court in *Bank of Louisiana* did not directly answer whether structural claims should be considered different than other types of constitutional claims, and I accordingly do not think that *Bank of Louisiana* compels any particular outcome here with respect to the removal claim. After analyzing Cochran's claims under the *Thunder Basin* factors, I would conclude that her structural removal claim is not the type over which Congress intended to limit jurisdiction. For these reasons, I respectfully dissent.