No. 19-10396

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————

MICHELLE COCHRAN,

Plaintiff-Appellant,

v.

SECURITIES AND EXCHANGE COMMISSION;
ELAD L. ROISMAN, in his official capacity as Acting Chairman of the
U.S. Securities and Exchange Commission; JEFFREY A. ROSEN, in his official
capacity as Acting U.S. Attorney General,

Defendants-Appellees.

———————————

On Appeal from the United States District Court
for the Northern District of Texas, No. 4:19-cv-66-A, Hon. John McBryde

———————————

## EN BANC BRIEF FOR APPELLEES
———————————

JEFFREY BOSSERT CLARK
  *Acting Assistant Attorney General*

ERIN NEALY COX
  *United States Attorney*

MARK B. STERN
JOSHUA M. SALZMAN
DANIEL AGUILAR
AMANDA L. MUNDELL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7266*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-5432*

**CERTIFICATE OF INTERESTED PERSONS**

A certificate of interested persons is not required, as defendants-appellees are a government agency and government officials sued in their official capacities. Fifth Cir. R. 28.2.1.

CERTIFICATE OF INTERESTED PERSONS .............................................................i

TABLE OF AUTHORITIES ............................................................................. iv

STATEMENT OF JURISDICTION ...................................................................... 1

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE ISSUE ........................................................................... 3

STATEMENT OF THE CASE ............................................................................ 3

I.     STATUTORY AND REGULATORY FRAMEWORK ...................................... 3

II.    PLAINTIFF'S ENFORCEMENT PROCEEDING BEFORE
       THE SECURITIES AND EXCHANGE COMMISSION ................................. 6

III.   DISTRICT COURT PROCEEDINGS ...................................................... 9

SUMMARY OF ARGUMENT ........................................................................... 11

STANDARD OF REVIEW ............................................................................... 13

ARGUMENT ................................................................................................ 13

I.     THE COURTS OF APPEALS, NOT THE DISTRICT COURTS, HAVE
       JURISDICTION OVER PLAINTIFF'S CLAIMS ......................................... 13

       A.     Under Supreme Court Precedents, Congress May Divest
              District Courts Of Jurisdiction Over Constitutional Claims
              When Those Claims Can Be Raised And Preserved In
              Pending Administrative Proceedings With Review In The
              Courts Of Appeals ................................................................ 13

              1.     *Thunder Basin Coal Co. v. Reich* .................................. 14

              2.     *Elgin v. Department of Treasury* .................................... 17

              3.     *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.* ................ 20

B.    Applying These Precedents, This Court And Others Have
      Unanimously Concluded That Separation-Of-Powers Challenges
      To Enforcement Proceedings Must Be Channeled Through
      Those Proceedings ...................................................................................... 22

C.    There Is No Sound Basis For Creating A Separate Rule
      For Separation-Of-Powers Challenges To Pending
      Enforcement Proceedings ........................................................................... 29

II.    PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION ................................... 38

CONCLUSION ........................................................................................................... 41

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**  <span style="float:right">**Page(s)**</span>

*Arthrex, Inc. v. Smith & Nephew, Inc.,*
941 F.3d 1320 (Fed. Cir. 2019) ............................................... 24, 31
*cert. granted* --- S. Ct. ---, 2020 WL 6037208 (U.S. Oct. 13, 2020) ............................... 24

*Axon Enterprise, Inc. v. FTC,*
452 F. Supp. 3d 882 (D. Ariz. 2020) ............................................... 32

*Bandimere v. SEC,*
844 F.3d 1168 (10th Cir. 2016) ............................................... 34

*Bank of Louisiana v. FDIC,*
919 F.3d 916 (5th Cir. 2019) ...................... 12, 13, 14, 22, 23, 24, 25, 26, 27, 29, 32, 33

*Bebo v. SEC,*
799 F.3d 765 (7th Cir. 2015) ............................................... 27, 28, 29, 32, 33

*Bennett v. SEC,*
844 F.3d 174 (4th Cir. 2016) ............................................... 27, 28, 29, 32, 34

*Boerschig v. Trans-Pecos Pipeline, LLC,*
872 F.3d 701 (5th Cir. 2017) ............................................... 38

*Cochran v. SEC,*
969 F.3d 507 (5th Cir. 2020) ............................................... 11, 22, 38

*Elgin v. Department of Treasury,*
567 U.S. 1 (2012) ............................ 14, 16, 17, 18, 19, 23, 25, 27, 33

*Energy Transfer Partners, L.P. v. Federal Energy Regulatory Commission,*
567 F.3d 134 (5th Cir. 2009) ............................................... 12, 38, 39

*Free Enterprise Fund v. Public Company Accounting Oversight Board,*
561 U.S. 477 (2010) ............................ 10, 14, 19, 20, 21, 24, 27

*FTC v. Standard Oil Co. of Cal.,*
449 U.S. 232 (1980) ............................................... 10, 35, 36, 39

*Hill v. SEC,*
825 F.3d 1236 (11th Cir. 2016) ............................................... 27, 28, 29, 34, 41

*In re Bank of Louisiana,*
   2016 WL 9050999 (FDIC Nov. 15, 2016) .................................................. 22

*Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.,*
   684 F.3d 1332 (D.C. Cir. 2012) .................................................................. 24

*Jarkesy v. SEC,*
   803 F.3d 9 (D.C. Cir. 2015) .......................................12, 25, 27, 29, 32, 34, 36

*LabMD, Inc. v. FTC,*
   776 F.3d 1275 (11th Cir. 2015) .................................................................. 33

*Leedom v. Kyne,*
   358 U.S. 184 (1958) .................................................................................... 26

*Louisiana Real Estate Appraisers Bd. v. FTC,*
   976 F.3d 597 (5th Cir. 2020) ...................................................................... 40

*Lucia v. SEC,*
   138 S. Ct. 2044 (2018) .....................................................................7, 8, 34

*Massieu v. Reno,*
   91 F.3d 416 (3d Cir. 1996) .......................................................................... 31

*McNary v. Haitian Refugee Center, Inc.,*
   498 U.S. 479 (1991) .................................................................................... 26

*MFS Sec. Corp. v. SEC,*
   380 F.3d 611 (2d Cir. 2004) ........................................................................ 8

*Morris & Dickson Co. v. Whitaker,*
   360 F. Supp. 3d 434 (W.D. La. 2018) ........................................................ 30

*National Park Hosp. Ass'n v. Department of the Interior,*
   538 U.S. 803 (2003) .................................................................................... 38

*Nyunt v. Chairman, Broadcasting Bd. of Governors,*
   589 F.3d 445 (D.C. Cir. 2009) .................................................................... 27

*Oestereich v. Selective Service System Local Board No. 11,*
   393 U.S. 233 (1968) .............................................................................26, 27

*PHH Corp. v. CFPB,*
   839 F.3d 1 (D.C. Cir. 2016) ......................................................... 34
   *rev'd en banc* 881 F.3d 75 (D.C. Cir. 2018) .......................... 34

*Randall D. Wolcott, M.D., P.A. v. Sebelius,*
   635 F.3d 757 (5th Cir. 2011) ....................................................... 37

*Seila Law LLC v. CFPB,*
   140 S. Ct. 2183 (2020) .................................................................. 24

*Telecommunications Research & Action Ctr. v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984) ...................................................... 37

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994)................... 10, 12, 14, 15, 16, 17, 18, 19, 21, 23, 26, 27, 29, 30, 37

*Tilton v. SEC,*
   824 F.3d 276 (2d Cir. 2016) .......................................... 27, 28, 29, 34

*Total Gas & Power North America, Inc. v. Federal Energy Regulatory Commission,*
   859 F.3d 325 (5th Cir. 2017)..................................... 12, 39, 40, 41

*United States v. Hicks,*
   958 F.3d 399 (5th Cir. 2020) ....................................................... 33

*Weaver v. Massachusetts,*
   137 S. Ct. 1899 (2017) .................................................................. 33


**Constitution and Statutes:**

U.S. Const. art. II..................................................... 9, 25, 28, 33, 34

U.S. Const. art. II, § 2, cl. 2 .............................................. 7, 40

5 U.S.C. § 556(b)................................................................... 4

5 U.S.C. § 556(b)(3) ............................................................ 30

5 U.S.C. §§ 702, 706 ............................................................ 1

5 U.S.C. § 1202(d)................................................................ 8

5 U.S.C. § 7513(a) ............................................................... 31

5 U.S.C. § 7521 ........................................................... 1, 3, 8, 9

5 U.S.C. § 7703(b)(1)(A) ................................................. 31

8 U.S.C. § 1101(b)(4) ..................................................... 30

8 U.S.C. § 1324a(e)(8) .................................................... 30

12 U.S.C. § 1818(h)(2) ................................................. 22, 23

15 U.S.C. § 45(b)-(d) ..................................................... 31

15 U.S.C. § 78d-1(a) ....................................................... 4

15 U.S.C. § 78d-3 ....................................................... 6, 36

15 U.S.C. § 78d-3(a) .................................................... 4, 36

15 U.S.C. § 78d-3(a)(2) .................................................... 6

15 U.S.C. § 78u(d) .......................................................... 4

15 U.S.C. § 78u .......................................................... 26

15 U.S.C. § 78u-2 .......................................................... 4

15 U.S.C. § 78u-2(a)(2) .................................................... 4

15 U.S.C. § 78u-3 .................................................... 4, 6, 26

15 U.S.C. § 78u-3(b) ..................................................... 25

15 U.S.C. § 78y ...................... 2, 5, 11, 17, 20, 21, 22, 23, 26, 33, 34, 37, 38, 40

15 U.S.C. § 717r(b) ....................................................... 31

21 U.S.C. § 877 ........................................................... 30

28 U.S.C. § 1291 ........................................................... 1

28 U.S.C. § 1331 ...................................................... 13, 37

28 U.S.C. §§ 1331, 1346, 1651, 2201 ....................................... 1

28 U.S.C. § 2342(4) ...................................................... 31

29 U.S.C. § 160(f) ............................................................ 31

30 U.S.C. § 816(a)(1), (c) ............................................... 15

30 U.S.C. §§ 818(a), 820(j) ............................................ 15

33 U.S.C. § 921(c) ........................................................... 30

42 U.S.C. § 1320a-7a(e) ................................................. 30

42 U.S.C. § 5841(e) ......................................................... 31

47 U.S.C. §§ 227(e), 402 ................................................. 31

## Regulations:

5 C.F.R. § 213.3102 ......................................................... 31

8 C.F.R. § 1003.1 ............................................................. 30

17 C.F.R. §§ 201.221-201.360 ....................................... 4

17 C.F.R. § 201.360(a)(2) ............................................... 25

17 C.F.R. § 201.360(d)(2) ............................................... 5

17 C.F.R. §§ 201.410(a), 201.411(c) .............................. 4

17 C.F.R. § 201.411(a) .................................................... 5

28 C.F.R. § 0.100 ............................................................ 30

## Enforcement Proceeding Filings:

Answer,
   *In re Cochran* (SEC Sept. 10, 2019),
   http://go.usa.gov/xA3t5 ....................................... 9, 25

Initial Decision,
   *In re Cochran* (SEC Mar. 7, 2017),
   https://go.usa.gov/xy5CY ........................................ 6

Letter from Michelle Helterbran Cochran to Brent J. Fields,
*In re Cochran* (SEC July 15, 2017),
https://go.usa.gov/xy5Ct ................................................................ 7

Order,
*In re Cochran* (SEC July 23, 2019),
https://go.usa.gov/xysDq .............................................................. 9

Order Ratifying Actions,
*In re Cochran* (SEC Jan. 26, 2018),
https://go.usa.gov/xy5gR .............................................................. 7

Order Scheduling Briefs,
*In re Cochran* (SEC Aug. 8, 2017),
https://go.usa.gov/xy5rn ................................................................ 7

Resp. Mot. for an Order Dismissing the Proceedings,
*In re Cochran* (SEC Dec. 31, 2018),
https://go.usa.gov/xyKFu ........................................ 8, 25, 26, 35

**Other Authorities:**

Resp. Supp. Br.,
*Fleming v. USDA*,
2020 WL 1025336 (D.C. Cir. Feb. 27, 2020) .............................. 3

Pls. Opp. to Mot. to Dismiss,
*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
2006 WL 1624261 (D.D.C. June 5, 2006) .................................. 20

Resp. Br.,
*Lucia v. SEC*,
2017 WL 5899983 (U.S. Nov. 29, 2017) ...................................... 7

**Dockets:**

*Jarkesy v. SEC*, No. 20-61007 (5th Cir.) .................... 1, 24, 29, 35, 36

*Axon Enterprise, Inc. v. FTC*, No. 20-15662 (9th Cir.) ................... 2, 32

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 5 U.S.C. §§ 702, 706; 28 U.S.C. §§ 1331, 1346, 1651, 2201. ROA.9. On March 25, 2019, the district court issued a final order dismissing plaintiff's complaint for lack of jurisdiction. ROA.278-79. Plaintiff filed a notice of appeal on April 8, 2019. ROA.280. This Court has jurisdiction under 28 U.S.C. § 1291.

## INTRODUCTION

Plaintiff Michelle Cochran is a respondent in an administrative enforcement proceeding before the Securities and Exchange Commission, where the Commission has assigned an administrative law judge (ALJ) to conduct an evidentiary hearing. By statute, the Commission may remove the ALJ from his office only for "good cause." 5 U.S.C. § 7521. In the enforcement proceeding, plaintiff has argued that this statutory removal restriction is unconstitutional. That same issue is currently pending before this Court in *Jarkesy v. SEC*, No. 20-61007 (5th Cir.), where the petitioners seek judicial review of a final Commission order. The *Jarkesy* petitioners—represented by the same counsel who represents plaintiff here—have preserved a constitutional challenge to the ALJ statutory removal restrictions. In *Jarkesy*, the Court will have the opportunity to address the merits of that constitutional question after full adversarial briefing.

This case is not about the merits of plaintiff's assertions. Instead, it presents a jurisdictional question. Plaintiff here is a respondent in a pending enforcement

proceeding that seeks to determine whether she violated the securities laws by improperly certifying audits for publicly traded companies. Plaintiff sued in district court to enjoin that proceeding, based on her claims that aspects of the proceeding were unconstitutional. The district court properly held that it lacked jurisdiction over those claims, which instead must be presented to the Commission in the first instance, 15 U.S.C. § 78y(c), and then—if plaintiff receives an adverse order—to the court of appeals under 15 U.S.C. § 78y(a).

Plaintiff argues that, notwithstanding the review scheme created by Congress, she should be able to sue in district court because she raises a separation-of-powers challenge. That claim is without support in the precedents of the Supreme Court and this Court, and has been rejected by every court of appeals to have considered it. The implications of plaintiff's position are sweeping. Separation-of-powers challenges are in no way limited to claims concerning ALJs. On plaintiff's theory, a respondent can sue in district court to enjoin any enforcement proceeding by claiming that any adjudicator has allegedly improper removal restrictions—including, for instance, immigration judges who preside over removal proceedings. Indeed, plaintiff's position extends to any enforcement proceeding initiated by any agency whose members have statutory removal restriction. Such suits are already pending. *Axon Enterprise, Inc. v. FTC*, No. 20-15662 (9th Cir.) (raising separation-of-power challenge to restrictions on removal for Commissioners of the FTC). Widespread application of plaintiff's theory conflicts with common sense. Congress would not have

authorized agencies to initiate enforcement proceedings and vested review of those proceedings in the courts of appeals if a respondent could always sue in district court to enjoin those proceedings before they began.

The merits of plaintiff's constitutional claim can be reviewed in a properly presented case. The United States has explained elsewhere that "good cause" restrictions on ALJ removal in 5 U.S.C. § 7521 are properly and broadly construed to permit the President, acting through the Heads of Executive Departments, to remove ALJs for misconduct, poor performance, or failure to follow lawful directives. Resp. Supp. Br. 13-36, *Fleming v. USDA*, 2020 WL 1025336 (D.C. Cir. Feb. 27, 2020). Those merits are not at issue here. The sole question on appeal is jurisdiction, and the district court rightly concluded that plaintiff's claims must be raised in the enforcement proceeding and then on review to this Court.

## STATEMENT OF THE ISSUE

Whether a respondent in a pending enforcement proceeding before the Securities and Exchange Commission can sue in district court to enjoin the proceeding, based on a separation-of-powers challenge to an adjudicator assigned to the proceeding.

## STATEMENT OF THE CASE

## I. STATUTORY AND REGULATORY FRAMEWORK

Federal statutes create a comprehensive scheme for the commencement and review of civil enforcement actions by the Securities and Exchange Commission (SEC

or Commission).  As relevant here, the Securities Exchange Act of 1934 (Exchange Act) authorizes the Commission to address potential violations by filing an enforcement action in federal district court or in proceedings before the agency.  *See, e.g.*, 15 U.S.C. §§ 78u(d), 78u-1, 78u-2, 78u-3.  The Commission may, for example, initiate an enforcement proceeding against "any person" for violating the Exchange Act, *id.* § 78u-3, and may seek civil monetary penalties in that proceeding, *id.* § 78u-2(a)(2).  Upon finding that a person has willfully violated the securities laws, willfully aided and abetted such a violation, or engaged in "improper professional conduct," the Commission may also censure that person and deny that person the "privilege of appearing or practicing before the Commission."  *Id.* § 78d-3(a).

For cases in which the Commission institutes an administrative proceeding, the Commission may assign the initial stages of the proceeding to itself, to a single Commissioner, or to an administrative law judge.  *See* 15 U.S.C. § 78d-1(a) (Commission's delegation authority); 5 U.S.C. § 556(b) (Administrative Procedure Act's authorization for hearings to be conducted by the agency, a member of the agency, or an ALJ).  When the Commission assigns an ALJ to preside, the ALJ will receive evidence, hold a hearing, hear argument, and issue an initial decision.  17 C.F.R. §§ 201.221-201.360.  A respondent or the SEC's Division of Enforcement may appeal the "initial decision" by filing a "petition for review" with the Commission, and the Commission may also choose to review such a decision "on its own initiative."  *Id.* §§ 201.410(a), 201.411(c).  If no one seeks review of the ALJ's decision,

and the Commission does not grant review *sua sponte*, the Commission issues an order stating that the initial decision has become final. *Id.* § 201.360(d)(2). On a petition for review, the Commission engages in de novo review of the ALJ's decision, and will issue an order affirming, reversing, modifying, or setting aside the ALJ's decision, or remanding for further proceedings. *Id.* § 201.411(a).

If the Commission issues an adverse decision, the respondent "may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit," by filing a petition with the relevant court of appeals. 15 U.S.C. § 78y(a)(1). Once the petition is filed, the court of appeals "has jurisdiction, which becomes exclusive on the filing of the record," to "affirm or modify and enforce or to set aside the order in whole or in part." *Id.* § 78y(a)(3).

The Exchange Act sets forth what constitutes the agency record, *id.* § 78y(a)(2); the standard of review of the Commission's factual findings, *id.* § 78y(a)(4); and the process for seeking a stay of the Commission order, *id.* § 78y(c)(2). Either party may seek leave from the court of appeals to "adduce additional evidence," and the court "may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate." *Id.* § 78y(a)(5). Following any such remand, the Commission "shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order." *Id.*

## II.   PLAINTIFF'S ENFORCEMENT PROCEEDING BEFORE THE SECURITIES AND EXCHANGE COMMISSION

**A.**  In 2016, the Commission issued an order instituting administrative proceedings against plaintiff under 15 U.S.C. §§ 78d-3, 78u-3.  ROA.142-43 (citing Sections 4C and 21C of the Exchange Act).  The order was based on allegations made by the Commission's Division of Enforcement that plaintiff (a certified public accountant) and others had "failed to conduct at least 16 annual audits and 35 quarterly reviews in accordance with PCAOB [Public Company Accounting Oversight Board] standards" in several ways.  ROA.143-44 (footnote omitted).  Plaintiff was alleged to have "willfully aided and abetted and caused violations of the federal securities laws," and to have "engaged in improper professional conduct subject to" 15 U.S.C. § 78d-3(a)(2) and the Commission's Rules of Practice.  ROA.150-51.

The proceedings were assigned to an ALJ, who issued an initial decision finding that plaintiff "was responsible for six audits and eighteen reviews that did not comply with PCAOB standards," and caused violations of the Exchange Act and the Commission's rules.  Initial Decision at 25-26, *In re Cochran* (SEC Mar. 7, 2017), https://go.usa.gov/xy5CY.  The ALJ ordered plaintiff to cease and desist from further violations, denied her the privilege of appearing or practicing before the Commission as an accountant, and imposed a $22,500 civil monetary penalty.  *Id.* at 32.  Plaintiff did not petition the Commission for review, and the Commission issued a decision stating that the initial decision had become final.  ROA.157-58.

One month later, plaintiff sent a letter to the Commission, asserting that she had not been served with the initial decision and asking for an opportunity to respond. Letter from Michelle Helterbran Cochran to Brent J. Fields, *In re Cochran* (SEC July 15, 2017), https://go.usa.gov/xy5Ct. The Commission ordered briefing on whether plaintiff's request for review was timely. Order Scheduling Briefs, *In re Cochran* (SEC Aug. 8, 2017), https://go.usa.gov/xy5rn.

**B.** While that issue was pending, the Solicitor General submitted a brief in the Supreme Court case of *Lucia v. SEC*, 138 S. Ct. 2044 (2018). In *Lucia*, the petitioner had argued to the Commission and, after a final order, again to the court of appeals that the Commission's ALJs are inferior officers under the Appointments Clause who must be appointed by the President, a Court of Law, or the Head of a Department (such as the Commission). *See* U.S. Const. art. II, § 2, cl. 2. The Solicitor General's brief agreed with petitioner's position, stating that, in the government's view, the Commission's ALJs were inferior officers. Resp. Br. 9-18, *Lucia v. SEC*, 2017 WL 5899983 (U.S. Nov. 29, 2017).

The Commission had not previously appointed its ALJs. In light of the Solicitor General's brief, the Commission issued an order that ratified the previous appointments of its ALJs and remanded all pending administrative proceedings, including plaintiff's, to its ALJs. ROA.160-62, 164. The ALJ assigned to this case ratified his earlier decision, Order Ratifying Actions, *In re Cochran* (SEC Jan. 26, 2018), https://go.usa.gov/xy5gR, and plaintiff petitioned for Commission review.

**C.** While plaintiff's petition was pending, the Supreme Court issued its decision in *Lucia*, holding that the Commission's ALJs were inferior officers who had not been properly appointed at the time of Lucia's administrative proceeding. 138 S. Ct. at 2049. The Court held that the remedy for this Appointments Clause violation was a remand to the agency for a new hearing before a *different*, properly appointed officer. *Id.* at 2055.

Consistent with that prescribed remedy, the Commission remanded plaintiff's proceeding for a new hearing before a different, properly appointed ALJ. ROA.167-69, 172; ROA.179 (assigning plaintiff's proceeding, No. 3-17228, to ALJ Carol Fox Foelak).

Plaintiff moved to dismiss the administrative proceedings, arguing that the ALJ assigned to the case has multiple layers of protection from removal that violate the Constitution. Resp. Mot. for an Order Dismissing the Proceedings at 24-26, *In re Cochran* (SEC Dec. 31, 2018), https://go.usa.gov/xyKFu (Resp. Mot.). Plaintiff alleged that the President cannot adequately control the actions of the Executive Branch because ALJs may only be removed by the Commissioners for cause, 5 U.S.C. § 7521(a); because the Commissioners may only be removed by the President for cause, *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004); and because an ALJ removal decision is reviewed by the Merit Systems Protection Board, whose members may only be removed by the President for cause, 5 U.S.C. § 1202(d). Resp. Mot. 25-26. Plaintiff asserted that the appropriate remedy for this alleged constitutional

violation "is to refer this matter for trial before an appropriate member of the Commission." *Id.* at 26. Plaintiff also argued that the administrative proceedings should be dismissed because the Commission had not properly commenced a hearing under the relevant statutory and regulatory deadlines. *Id.* at 6-23. The ALJ considered plaintiff's arguments on the merits and rejected them, holding that the administrative proceedings were timely and that 5 U.S.C. § 7521 does not offend the Constitution. Order, *In re Cochran* (SEC July 23, 2019), https://go.usa.gov/xysDq. Plaintiff later filed an answer, denying the allegations against her and raising as an affirmative defense her claim that the "Administrative Proceeding violates Article II of the United States Constitution." Answer at 7, *In re Cochran* (SEC Sept. 10, 2019), http://go.usa.gov/xA3t5.

## III.   DISTRICT COURT PROCEEDINGS

Less than three weeks after filing her motion to dismiss in the enforcement proceeding, plaintiff filed this suit in district court seeking to enjoin those same proceeding. ROA.1, 27-28. Plaintiff argued that an injunction was warranted because the Commission's ALJs unconstitutionally have multiple layers of protection from removal, ROA.24-26, ¶¶ 80-88, and because the proceeding violated due process because it had not timely commenced under the relevant statutory and regulatory deadlines, ROA.26-27, ¶¶ 89-95.

The district court dismissed the case for lack of subject matter jurisdiction, ROA.272, holding that plaintiff was required to first raise her claims before the

Commission, and then, if aggrieved by a Commission decision, she may seek direct review of that decision in the courts of appeals. The district court explained that the case was governed by the Supreme Court's decision in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994), which held that "Congress can implicitly divest district courts of jurisdiction over certain actions by creating a statutory scheme of administrative review followed by judicial review in a federal court of appeals." ROA.274. The district court concluded that the Exchange Act, which vests judicial review of Commission orders in the courts of appeals, constitutes such a scheme. ROA.274-75. Thus, plaintiff's statutory and constitutional challenges to the administrative proceedings could be raised on a petition for review to the court of appeals, but could not be brought in a district court complaint. ROA.275.

Although plaintiff asserted that seeking judicial review would first require her to complete an allegedly unconstitutional administrative proceeding, the district court held that such allegations did not create district court jurisdiction. ROA.277 (citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)). The court also explained that plaintiff was in a fundamentally different posture from the plaintiffs in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010). ROA.277-78. The *Free Enterprise* plaintiffs were not subject to any enforcement proceeding, and could obtain judicial review under the Exchange Act only by deliberately committing a violation to trigger an enforcement proceeding. Thus, the *Free Enterprise* plaintiffs had "no other meaningful avenue of judicial relief available,"

10

while, by contrast, plaintiff here challenges a pending enforcement proceeding that "will result in an SEC order that she can challenge in a court of appeals if she is dissatisfied with it." ROA.277-78. Thus, "plaintiff will have the chance to obtain judicial review of her claims, just not in this court." ROA.278.

Plaintiff appealed. A motions panel of this Court enjoined the ALJ from conducting an evidentiary hearing pending the Court's resolution of the appeal. Order (Sept. 24, 2019). A merits panel of this Court held that the district court correctly determined that it lacked jurisdiction over plaintiff's claims. *Cochran v. SEC*, 969 F.3d 507 (5th Cir. 2020). The panel held that, consistent with the Supreme Court's decisions, plaintiff must first present her claims to the Commission and then, if necessary, on judicial review to this Court. *Id.* at 514-16. Judge Haynes dissented in part, agreeing with the panel majority that the district court lacked jurisdiction over plaintiff's due process claims, but disagreeing that the district court lacked jurisdiction over the separation-of-powers claims. *Id.* at 518 & n.1 (Haynes, J., dissenting in part). This Court then granted rehearing en banc.

## SUMMARY OF ARGUMENT

**I.** Congress has authorized the Commission to enforce the federal securities laws and to supervise the practice of accountants before the Commission through administrative proceedings. Congress has further provided that judicial review of those proceedings shall be available directly in the court of appeals. 15 U.S.C. § 78y(a)(1). Plaintiff, currently a respondent in such a proceeding, has raised her

constitutional claims in that administrative proceeding, and will be able to obtain judicial review in a court of appeals if she is aggrieved by the Commission's final order.

Plaintiff may not, however, short-circuit that process by suing in district court to enjoin that enforcement proceeding, based on constitutional claims that she can raise—and has raised—in that proceeding. That conclusion follows directly from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994), in which the Supreme Court held that plaintiffs subject to a "nearly identical" administrative scheme, *Jarkesy v. SEC*, 803 F.3d 9, 16 (D.C. Cir. 2015), were required to assert their constitutional challenge on review of a final agency decision. As this Court has explained, a plaintiff cannot file a district court lawsuit to challenge an administrative proceeding when (1) Congress has "authoriz[ed] review of challenges to a final agency order by a federal circuit court," (2) plaintiff's claims are "inextricably intertwined with the conduct of the very enforcement proceeding" at issue, and (3) the agency's expertise may help resolve plaintiff's claims by, for example, "finding the [plaintiff] innocent of the statutory violations [she] was accused of committing." *Bank of Louisiana v. FDIC*, 919 F.3d 916, 925, 928, 929 (5th Cir. 2019).

**II.** Principles of ripeness confirm that plaintiff can seek review only of a final Commission order. This Court explained in *Energy Transfer Partners, L.P. v. Federal Energy Regulatory Commission,* 567 F.3d 134 (5th Cir. 2009), and *Total Gas & Power North America, Inc. v. Federal Energy Regulatory Commission,* 859 F.3d 325 (5th Cir. 2017), that

statutory and constitutional challenges to an ALJ in an ongoing administrative proceeding where no sanction has been imposed are not ripe for judicial review. That is the posture of this case. Unless and until plaintiff receives an adverse, final order from the Commission, the courts lack subject-matter jurisdiction over her unripe claims. And, as the governing statute makes clear, when plaintiff receives a final order, review lies in the court of appeals.

## STANDARD OF REVIEW

The Court reviews de novo a district court's order of dismissal for lack of subject matter jurisdiction. *Bank of Louisiana v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019).

## ARGUMENT

## I. THE COURTS OF APPEALS, NOT THE DISTRICT COURTS, HAVE JURISDICTION OVER PLAINTIFF'S CLAIMS

### A. Under Supreme Court Precedents, Congress May Divest District Courts Of Jurisdiction Over Constitutional Claims When Those Claims Can Be Raised And Preserved In Pending Administrative Proceedings With Review In The Courts Of Appeals

District courts generally have jurisdiction over cases arising under the Constitution and federal law. *See* 28 U.S.C. § 1331. But Congress may "leapfrog[] district courts by channeling claims through administrative review and directly to federal appellate courts." *Bank of Louisiana v. FDIC*, 919 F.3d 916, 922 (5th Cir. 2019). When Congress creates such a scheme, it may "explicitly or implicitly" divest district courts of jurisdiction. *Id.* at 922-23. "To discern an implicit preclusion" of district

court jurisdiction, the Court first determines "whether it is 'fairly discernable' from the 'text, structure, and purpose' of the statutory scheme that Congress intended to preclude district court jurisdiction." *Id.* at 923. If so, the Court next determines whether plaintiff's claims "are of the type Congress intended to be reviewed within th[e] statutory structure," by looking to three factors: "(1) whether precluding district court jurisdiction 'could foreclose all meaningful judicial review'; (2) whether the [plaintiff]'s 'suit is wholly collateral to a statute's review provisions'; and (3) whether [plaintiff's] claims are 'outside the agency's expertise.'" *Id.*

That analysis is drawn chiefly from three Supreme Court precedents: *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994); *Elgin v. Department of Treasury*, 567 U.S. 1 (2012); and *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010). We examine those cases in detail below. At bottom, those cases establish that when Congress vests judicial review in the courts of appeals, a respondent in an administrative proceeding must raise constitutional challenges to that proceeding in that proceeding and preserve them for judicial review. Respondents may not circumvent the congressionally prescribed review scheme by seeking an injunction in district court, based on a claim that the respondent can raise to the agency and to the courts of appeals.

### 1. *Thunder Basin Coal Co. v. Reich*

In *Thunder Basin*, the Supreme Court comprehensively explained that Congress may implicitly divest district courts of jurisdiction over constitutional claims, and

instead require that those claims be raised in the courts of appeals at the end of an administrative proceeding. The statutory scheme at issue there, the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), mirrors the Exchange Act. If a mine operator allegedly violated the Mine Act, the Secretary of Labor could issue a citation, which the mine operator could challenge in an administrative proceeding. *Thunder Basin*, 510 U.S. at 207. The mine operator would receive a hearing before an ALJ, and could appeal any adverse ALJ decision to the Mine Safety and Health Review Commission. *Id.* at 207-08. The mine operator could further appeal any adverse agency decision to the courts of appeals. *Id.* at 208. The court of appeals would have "exclusive jurisdiction" after the agency filed the administrative record, and the court could issue a stay of any agency decision. 30 U.S.C. § 816(a)(1), (c). While the Mine Act authorized the Secretary of Labor to sue in district court in certain cases, *id.* §§ 818(a), 820(j), "[m]ine operators enjoy no corresponding right" to district court jurisdiction. *Thunder Basin*, 510 U.S. at 209.

In *Thunder Basin*, a mine operator had been warned by the Department of Labor that it was not in compliance with the Mine Act because it had failed to post information about miner representatives. 510 U.S. at 204. Rather than face a citation that it could challenge in administrative proceedings, the mine operator brought a pre-enforcement challenge in district court, alleging that posting the information would cause it irreparable harm and that proceeding through the Mine Act's review scheme would violate the company's due process rights. *Id.* at 205.

The Supreme Court affirmed dismissal of the complaint, holding that the Mine Act's text, structure, and purpose "demonstrate[] that Congress intended to preclude challenges such as the present one" by vesting the courts of appeals with "exclusive jurisdiction over challenges to agency enforcement proceedings." *Thunder Basin*, 510 U.S. at 208. The mine operator could not sue in district court, but must instead "complain to the Commission and then to the court of appeals." *Id.* at 209.

The Court then examined whether the company's claims fell outside Congress's scheme by examining whether the claims were "wholly collateral" to the Mine Act's review provisions or outside the agency's expertise, and whether a lack of district court jurisdiction "could foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212-13. The Court determined that none of those factors were met. The agency could clearly rule upon the company's statutory claims, and the agency "has addressed constitutional questions in previous enforcement proceedings." *Id.* at 215. And even if the due process claim laid beyond the agency's reach, the company's "constitutional claims here can be meaningfully addressed in the Court of Appeals." *Id.* Thus, the "Court expressly found that the statutory review scheme precluded district court jurisdiction over that constitutional claim." *Elgin*, 567 U.S. at 17 n.6 (discussing *Thunder Basin*, 510 U.S. at 214-16). Justices Scalia and Thomas concurred in part and concurred in the judgment, explaining that "the preclusion of pre-enforcement judicial review is constitutional *whether or not* compliance produces irreparable harm," because the company could seek judicial review before it was

forced to comply with any imposed penalties. *Thunder Basin*, 510 U.S. at 220 (Scalia

and Thomas, JJ., concurring). *See also* 15 U.S.C. 78y(c)(2) (both the Commission and

the courts of appeals may stay Commission orders pending judicial review when

warranted).

## 2. *Elgin v. Department of Treasury*

The Supreme Court applied the same analysis in *Elgin*, holding that the Civil

Service Reform Act (CSRA) provided an exclusive statutory review scheme that

precluded district court jurisdiction. 567 U.S. at 10-13. The statute provided that

federal agencies may take adverse employment actions against their employees (*e.g.*,

suspension or removal) after notice and an opportunity to respond before the agency.

*Id.* at 5-6. An employee can appeal an adverse decision to the Merit Systems

Protection Board, and seek further judicial review of an adverse Board decision in the

Federal Circuit, which has "exclusive jurisdiction." *Id.* at 6.

The plaintiffs in *Elgin* were fired from their federal employment because they

allegedly failed to register for the draft. *Elgin*, 567 U.S. at 6-7. Only one plaintiff

sought administrative review under the CSRA's review scheme, and even he chose not

to seek judicial review in the Federal Circuit. *Id.* at 7. Instead, all plaintiffs sued in

district court, arguing that the draft unconstitutionally discriminates on the basis of

sex by requiring only men to register. *Id.*

The Supreme Court affirmed dismissal of the complaint for lack of jurisdiction.

*Elgin*, 567 U.S. at 8. "Given the painstaking detail with which the CSRA sets out the

method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court." *Id.* at 11-12. Although the plaintiffs urged that the statutory review scheme should not preclude district court jurisdiction over constitutional claims, the Supreme Court rejected that argument, explaining that the "text and structure of the CSRA * * * provide no support for such an exception." *Id.* at 12; *see id.* at 15 (emphasizing that the statutory review scheme encompasses both facial and as-applied constitutional claims). Allowing district court jurisdiction would also undermine the statute's purpose by creating the "potential for inconsistent decisionmaking and duplicative judicial review" that the statutory scheme was designed to avoid. *Id.* at 14. Nothing in the statute supported the "odd notion that Congress intended to allow employees to pursue constitutional claims in district court at the cost of forgoing other, potentially meritorious claims" in the administrative proceedings. *Id.*

Applying the three *Thunder Basin* factors, the Court held that plaintiffs' facial constitutional challenge fell within the statutory review scheme. *Elgin*, 567 U.S. at 15. First, the statutory scheme provided meaningful judicial review. The Court assumed that the agency could not decide the constitutional challenge, *id.* at 16-17, but explained that "the CSRA provides review in the Federal Circuit, an Article III court fully competent to adjudicate petitioners' claims," *id.* at 17.

18

Second, the Court rejected plaintiffs' assertion that their claims were "wholly collateral" to the statutory scheme because they "have nothing to do with the types of day-to-day personnel actions adjudicated by the" Merit Systems Protection Board. *Elgin*, 567 U.S. at 21-22. Instead, the Court explained, those "constitutional claims are the vehicle by which [plaintiffs] seek to reverse" the decisions to fire them, seeking relief that the agency "and the Federal Circuit [can] provide." *Id.* at 22.

Third, the Court held that the agency could apply its expertise to plaintiffs' case by deciding "many threshold questions that may accompany a constitutional claim," which "may obviate the need to address the constitutional challenge." *Elgin*, 567 U.S. at 22-23. For example, the agency's resolution of statutory and other claims "in the [plaintiffs'] favor might fully dispose of the case." *Id.* at 23. Accordingly, the Court saw "no reason to conclude that Congress intended to exempt such claims from exclusive review before the [agency] and the Federal Circuit." *Id.* at 23.

*Thunder Basin* and *Elgin* provide a generally applicable rule: constitutional challenges directed at an enforcement proceeding (as in *Thunder Basin*) or to an adverse action that triggers an administrative proceeding (as in *Elgin*) should be channeled through those proceedings and to the courts of appeals, because both the agency and the courts of appeals can decide the case in plaintiff's favor and grant appropriate relief. That rule does *not* apply when a prospective plaintiff is not involved in any pending administrative proceeding. *Free Enterprise*, 561 U.S. at 489-91.

### 3. *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*

In *Free Enterprise*, the plaintiffs raised a separation-of-powers challenge to the

Public Company Accounting Oversight Board (a regulatory body overseen by the

SEC). *Free Enterprise*, 561 U.S. at 487. The Board had "beg[un] a formal

investigation" into the plaintiffs' accounting practices, but the Board had not initiated

any enforcement proceeding. *Id.* The plaintiffs sued in district court, arguing that

they had standing because they were "directly subject to the regulatory authority of

the Board and thereby injured by the costs of regulatory compliance * * * even though

[they] ha[ve] not been subjected to penalties or formal disciplinary action."[1] The

plaintiffs contended that the Board's structure was unconstitutional because its

members had not been properly appointed under the Appointments Clause and

because their statutory restrictions on removal violated the separation of powers. *Id.*

at 487, 503.

The Supreme Court held that plaintiffs could bring that action in district court,

and were not subject to the channeling provisions of the Exchange Act, 15 U.SC.

§ 78y, which vested review of Commission decisions in the courts of appeals. The

Court explained that plaintiffs sought to challenge the Board's general authority to

regulate them, and the Exchange Act "provides only for judicial review of *Commission*

action." *Free Enterprise*, 561 U.S. at 490. Because "not every Board action is

---

[1] Pls. Opp. to Mot. to Dismiss at 37, *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 2006 WL 1624261 (D.D.C. June 5, 2006).

encapsulated in a final Commission order or rule," the Exchange Act could not necessarily provide for review of all actions plaintiffs might wish to challenge. *Id.*

More fundamentally, the *Free Enterprise* plaintiffs were not in an administrative proceeding that would culminate in a final Commission order that could be challenged in the court of appeals under § 78y. Thus, in order to trigger the Exchange Act's judicial review provisions, plaintiffs would have to take some additional, voluntary action. They would need to "select and challenge a Board rule at random," or voluntarily choose to "*incur* a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony" that would trigger an enforcement proceeding. *Free Enterprise*, 561 U.S. at 490. Those requirements made little sense, and the Court declined to require the plaintiffs to take "violative action" simply to create an administrative proceeding where none had existed before. *Id.* at 490-91 (explaining that this is not "a 'meaningful' avenue of relief"). The Court further held that the plaintiffs' claims fell "outside the Commission's competence and expertise" because, unlike the agencies in *Thunder Basin* and *Elgin*, the Commission could not decide any statutory or regulatory issues that might resolve the case without reaching the constitutional challenges. *See id.* at 491 (comparing to *Thunder Basin*).

**B.    Applying These Precedents, This Court And Others Have Unanimously Concluded That Separation-Of-Powers Challenges To Enforcement Proceedings Must Be Channeled Through Those Proceedings**

**1.**  In addition to the panel's opinion in this case, *Cochran v. SEC*, 969 F.3d 507, 511-18 (5th Cir. 2020), this Court construed and applied these jurisdictional precedents in *Bank of Louisiana*, 919 F.3d at 925-30, where the Court correctly held that constitutional challenges to an enforcement proceeding must be channeled through the statutory review scheme for that proceeding.  There, the plaintiffs sued in district court to enjoin a pending enforcement proceeding brought by the Federal Deposit Insurance Corporation, "claiming the FDIC committed constitutional violations during the enforcement proceedings," *id.* at 921, including a "separation-of-powers challenge to the ALJ," *id.* at 930.  *See also In re Bank of Louisiana*, 2016 WL 9050999, at *13 (FDIC Nov. 15, 2016) (plaintiff arguing that "the ALJ was not properly appointed under the Appointments Clause and the ALJ's tenure protections violate separation of powers principles").  This Court affirmed the complaint's dismissal, explaining that the FDIC's judicial review statute "vests 'exclusive' jurisdiction to review final [FDIC] Board orders in the federal circuit courts." *Bank of Louisiana*, 919 F.3d at 919 (citing 12 U.S.C. § 1818(h)(2)).  The FDIC statute, like the Exchange Act, provided that a party aggrieved by a final agency decision in an administrative proceeding can seek judicial review in the courts of appeal by filing a petition for review.  *Compare* 12 U.S.C. § 1818(h)(2), *with* 15 U.S.C. § 78y(a)(1).  Under

both statutes, the courts of appeals attain jurisdiction once the petition is filed, and that jurisdiction is "exclusive" after the record is filed.  12 U.S.C. § 1818(h)(2); 15 U.S.C. § 78y(a)(3).

The Court explained that this statutory review scheme "displays Congress' intent to preclude district court jurisdiction over claims against the FDIC arising out of enforcement proceedings," which was "materially the same" as the Exchange Act. *Bank of Louisiana*, 919 F.3d at 924.  The Court then applied the *Thunder Basin* factors to the plaintiffs' constitutional challenges, and determined that they must be channeled through the FDIC's statutory review scheme to the courts of appeals.  *Id.* at 925-30.

That application of the *Thunder Basin* factors mirrors their proper application in this case.  First, the Court recognized that plaintiffs could receive meaningful judicial review because Congress had "authoriz[ed] review of challenges to a final agency order by a federal circuit court."  *Bank of Louisiana*, 919 F.3d at 925 (citing *Elgin*, 567 U.S. at 17; *Thunder Basin*, 510 U.S. at 215).  Here, if plaintiff is aggrieved by the Commission's final order, she may seek judicial review of that order in the courts of appeals, which will have the power to reverse, vacate, or affirm that order as appropriate.  15 U.S.C. § 78y(a).  Thus, "the SEC scheme presents an entirely meaningful avenue of relief' given that 'a court of appeals is available to hear' challenges to the Commission's final order."  *Bank of Louisiana*, 919 F.3d at 925.  Like the plaintiffs in *Bank of Louisiana*, *id.* at 926, plaintiff can raise and has raised her constitutional claims in the administrative proceeding, *see supra* pp. 8-9.  And like the

petitioner in *Jarkesy v. SEC*, No. 20-61007 (5th Cir.), she can continue to pursue those claims on judicial review if she is aggrieved by a final Commission order. And if this Court were to agree with plaintiff on the merits, it could order whatever relief it believed warranted. *See, e.g.*, *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-11 (2020) (severing removal restriction and remanding); *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 684 F.3d 1332, 1340-42 (D.C. Cir. 2012) (similar); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320, 1335-40 (Fed. Cir. 2019) (similar), *cert. granted* --- S. Ct. ---, 2020 WL 6037208 (U.S. Oct. 13, 2020).[2]

Second, plaintiff's constitutional claims are not "wholly collateral to [the] statute's review provisions[.]" *Free Enterprise Fund,* 561 U.S. at 489. Instead, plaintiff's challenges to the enforcement proceeding "arise directly from alleged irregularities in the agency enforcement proceedings." *Bank of Louisiana*, 919 F.3d at 928. Put another way, the only reason plaintiff can raise a separation-of-powers challenge to an ALJ is because she is already in an enforcement proceeding that involves an ALJ. Like the plaintiff in *Bank of Louisiana,* plaintiff has "raised those same claims as defenses in the * * * enforcement proceeding." *Id.* Her "claims are thus 'inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the [agency] the power to institute and resolve as an initial matter.'" *Id.* (quoting

---

[2] The Supreme Court's decision in *Seila Law* originated from a district court decision because the agency had sued in district court to enforce an administrative subpoena. 140 S. Ct. at 2194.

*Jarkesy v. SEC*, 803 F.3d 9, 23 (D.C. Cir. 2015)). "In other words, those claims 'do not arise "outside" the [agency] administrative enforcement scheme—they arise from actions the [agency] took in the course of that scheme,'" and thus are not "'wholly collateral' to the [enforcement] scheme." *Id.* (quoting *Elgin*, 567 U.S. at 21).[3]

Third, the Commission can bring its expertise to bear on plaintiff's case, both by adjudicating "the many threshold questions that may accompany" her constitutional claim, *Bank of Louisiana*, 919 F.3d at 929, and by providing plaintiff with a remedy she has requested for that claim. "To begin with, the [agency] could have mooted the [plaintiff's] constitutional claims by finding [her] innocent of the statutory violations [she] was accused of committing." *Id.* Thus, if the Commission finds that plaintiff did not violate the securities laws it will issue an order in her favor that will "fully dispose of the case." *Elgin*, 567 U.S. at 23. The Commission could also easily bring its expertise to bear on plaintiff's claims that the administrative proceedings were initiated after statutory and regulatory deadlines. ROA.26-27, ¶¶ 89-95 (complaint citing 15 U.S.C. § 78u-3(b), 17 C.F.R. § 201.360(a)(2)); *see also* Resp. Mot. 6-8, https://go.usa.gov/xyKFu (raising the same argument in the Commission's

---

[3] Moreover, her separation-of-powers claim appears to be "the vehicle by which [she] seek[s] to reverse" any Commission allegations or findings against her. *Elgin*, 567 U.S. at 22. *See* Answer at 7, *In re Cochran* (SEC Sept. 10, 2019), https://go.usa.gov/xA3t5 (arguing that the proceeding "violates Article II" and seeking that the enforcement proceeding "be dismissed with prejudice"); ROA.28 (plaintiff's prayer for relief, seeking to "[e]njoin[] the SEC from carrying out an administrative proceeding against Ms. Cochran").

proceedings). Those claims require an interpretation of the federal securities laws and the Commission's regulations, which "fall squarely within the Commission's expertise." *Thunder Basin*, 510 U.S. at 214.

Moreover, the Commission could also grant what plaintiff herself has identified as "the appropriate remedy" for her separation-of-powers challenge in the administrative proceedings: "to refer this matter for trial before an appropriate member of the Commission. Resp. Mot. 26, *In re Cochran* (SEC Dec. 31, 2018), https://go.usa.gov/xyKFu (citing 15 U.S.C. § 78u). That is relief that the Commission certainly has the power to grant in the first instance.

*Bank of Louisiana* also explained why plaintiff's reliance on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), is misplaced. En Banc Br. 17. In *McNary*, the district courts could exercise jurisdiction over a class action to review the government's denial of special worker status, when the statutory review scheme permitted judicial review only if the aliens "voluntarily surrender[ed] themselves for deportation." *Bank of Louisiana*, 919 F.3d at 926-27. Plaintiff's case is "nothing like that," *id.* at 927, because she is already subject to an enforcement proceeding, and even if the Commission orders sanctions against her, she can seek a stay of those sanctions pending judicial review by a court of appeals, 15 U.S.C. § 78y(c)(2).[4]

---

[4] Plaintiff's citations (at 17-18) to *Leedom v. Kyne*, 358 U.S. 184 (1958), and *Oestereich v. Selective Service System Local Board No. 11*, 393 U.S. 233 (1968), are similarly inapplicable. *Leedom* can allow "judicial review of agency action for alleged statutory

**2.** This Court, applying the framework set out in *Thunder Basin*, *Free Enterprise*, and *Elgin*, correctly held that a "separation-of-powers challenge to the ALJ" is the kind of claim that Congress intended to channel through agency proceedings "and the courts of appeal." *Bank of Louisiana*, 919 F.3d at 930 (alterations omitted); *accord Cochran*, 969 F.3d at 514-18.

This Court's holding and analysis accord with the decisions of the Second, Fourth, Seventh, Eleventh, and D.C. Circuits, each of which has held that the courts of appeal have exclusive jurisdiction over structural constitutional challenges to pending Commission proceedings. *Tilton v. SEC*, 824 F.3d 276, 278-79 (2d Cir. 2016); *Bennett v. SEC*, 844 F.3d 174, 188 (4th Cir. 2016); *Bebo v. SEC*, 799 F.3d 765, 766-67 (7th Cir. 2015); *Hill v. SEC*, 825 F.3d 1236, 1237-38 (11th Cir. 2016); *Jarkesy*, 803 F.3d at 12.

In *Tilton*, for example, the Second Circuit held that plaintiffs may not sue in district court to enjoin Commission proceedings based on an argument that the

---

violations even when a statute precludes review." *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.). But that does not apply here, where the Exchange Act provides an "alternative procedure for review of the statutory claim," and the agency has not "plainly act[ed] in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Id.* (quotation marks omitted). And the *Oestereich* plaintiff had been ordered inducted into the military even though he was exempt from the draft. 393 U.S. at 236-37. Plaintiff could only raise his exemption as a defense to prosecution or by writ of habeas corpus after induction. *Id.* at 235. As *Thunder Basin* explained, an "analogous situation is not presented here," because the agency can "address[] constitutional questions" in plaintiff's proceeding and her claims can be "meaningfully addressed in the Court of Appeals." 510 U.S. at 212-13, 215.

"proceeding is unconstitutional because the presiding ALJ's appointment violated Article II's Appointments Clause." *Tilton*, 824 F.3d at 278-79. Instead, under the Exchange Act, plaintiffs "must await a final Commission order before raising their Appointments Clause claim in federal court." *Id.* at 291.

Challenges to ALJ removal restrictions similarly must follow the judicial review provisions of the Exchange Act. The Eleventh Circuit in *Hill* held that the Exchange Act divested the district court of jurisdiction to consider plaintiffs' challenges to the administrative proceeding—including a challenge that "the administrative proceeding violates the removal protections of Article II of the United States Constitution because ALJs are protected by two layers of tenure." *Hill*, 825 F.3d at 1239, 1241. The Fourth Circuit reached the same result in *Bennett*, where the plaintiff alleged that the Commission's ALJs unconstitutionally "enjoy at least two levels of protection against removal." *Bennett*, 844 F.3d at 177-78. The district court dismissed the case and the Fourth Circuit affirmed, holding that plaintiff's "claims are of the type Congress intended to be reviewed within this framework." *Id.* at 188. And the Seventh Circuit came to the same conclusion in *Bebo*, explaining that plaintiff's challenge to the ALJ's "multiple layers of for-cause [removal] protection" may be properly heard in the courts of appeals under the Exchange Act if and when "the SEC renders an adverse final decision." 799 F.3d at 768, 775.

The proceedings in *Jarkesy* illustrate that a separation-of-powers challenge can be asserted before the agency and will not escape judicial review if the respondent

receives an adverse final agency determination. There, the D.C. Circuit held that the "securities laws provide an exclusive avenue for judicial review that [plaintiffs] may not bypass," and that plaintiffs may "raise [their] challenges in a petition for review to a court of appeals," after the Commission entered a final order. *Jarkesy*, 803 F.3d at 30. The *Jarkesy* plaintiffs complied with that directive, raised their challenges to the ALJ removal restrictions in the enforcement proceeding, and are now properly seeking judicial review in this Court. *Jarkesy v. SEC*, No. 20-61007 (5th Cir.).

In every one of those cases, the courts of appeals thoroughly examined the parties' contentions and rightly concluded that the Exchange Act creates an exclusive scheme for judicial review, and that the *Thunder Basin* factors support channeling constitutional challenges—including removal challenges—through those review provisions. *Tilton*, 824 F.3d at 282-91; *Bennett*, 844 F.3d at 183-88; *Bebo*, 799 F.3d at 773-75; *Hill*, 825 F.3d at 1245-52; *Jarkesy*, 803 F.3d at 17-30. *See also Bank of Louisiana*, 919 F.3d at 923 (examining and applying the "helpful" framework from these cases).

### C. There Is No Sound Basis For Creating A Separate Rule For Separation-Of-Powers Challenges To Pending Enforcement Proceedings

**1.** Plaintiff argues that she must be able to bring suit in district court because her "separation-of-powers claim * * * transcends any particular proceeding and instead challenges the very existence of the adjudicators within their current structure." En Banc. Br. 19 n.4 (quotation marks omitted). The application of that theory has sweeping consequences that Congress could never have intended.

On plaintiff's theory, if any agency assigns an enforcement proceeding to an ALJ—as they are generally permitted to do under the Administrative Procedure Act, 5 U.S.C. § 556(b)(3)—then the respondent can sue in district court to enjoin that proceeding. Statutory schemes for a great number of federal agencies authorize those agencies to hold administrative proceedings involving ALJs with judicial review in the courts of appeals.[5] Respondents in these proceedings have rightly been required to complete their administrative proceedings and seek review in the courts of appeals. *E.g.*, *Morris & Dickson Co. v. Whitaker*, 360 F. Supp. 3d 434, 437-38, 452 (W.D. La. 2018) (dismissing case raising removal challenge to Drug Enforcement Administration ALJ for lack of jurisdiction under *Thunder Basin*).

Plaintiff's theory seems to equally apply to immigration proceedings. An alien in removal proceedings might seek to raise a separation-of-powers challenge to the civil-service protections from removal that apply to most immigration judges and most members of the Board of Immigration Appeals.[6] Under plaintiff's view, an alien

---

[5] *E.g.*, Department of Health and Human Services proceedings for fraudulent Social Security claims (42 U.S.C. § 1320a-7a(e)); Transportation Security Administration proceedings for airlines that fail to ensure their aircraft do not contain unauthorized persons or explosives; Department of Homeland Security proceedings for unlawfully employing aliens (8 U.S.C. § 1324a(e)(8)); Drug Enforcement Administration proceedings for revoking a company's authorization to distribute controlled substances (21 U.S.C. § 877; 28 C.F.R. § 0.100); Department of Labor proceedings for determining whether a company is responsible for the health care costs of an injured longshore worker (33 U.S.C. § 921(c)).

[6] *See* 8 U.S.C. § 1101(b)(4) (immigration judges are attorneys appointed by the Attorney General); 8 C.F.R. § 1003.1(a)(1) (Board members are attorneys appointed

subject to pending removal proceedings could sue in district court to raise this kind of challenge to the immigration judge or the Board of Immigration Appeals. There is no doubt that such a removal challenge should be channeled through the immigration proceedings and, if there is an adverse order, to the courts of appeals. *See Massieu v. Reno*, 91 F.3d 416, 418-22 & n.4 (3d Cir. 1996) (Alito, J.) (holding that, under *Thunder Basin*, constitutional challenges to removal proceedings, including a nondelegation challenge, must be channeled to the court of appeals and may not be brought in district court). But in plaintiff's view, any alien in removal proceedings would be free to seek an injunction in district court.

In addition to challenges to ALJs, immigration judges, and other officials, separation-of-powers questions have also been asserted to the for-cause removal restrictions applicable to multi-member federal agencies. As is the case with the Commission, Congress has vested judicial review for many of these agencies' proceedings directly in the court of appeals.[7] Plaintiff's theory would permit any

_____

by the Attorney General); 5 C.F.R. § 213.3102(d) (designating career attorneys in Schedule A of the civil service); 5 U.S.C. § 7513(a) (authorizing removal of civil service employees "only for such cause as will promote the efficiency of the service"). Parties in other proceedings have raised similar challenges to these civil-service protections. *See, e.g., Arthrex*, 941 F.3d at 1332-34, 1335-38 (considering separation-of-powers challenge based in part on 5 U.S.C. § 7513(a)).

   [7] *See, e.g.,* 15 U.S.C. § 45(b)-(d) (Federal Trade Commission); 15 U.S.C. § 717r(b) (Federal Energy Regulatory Commission); 47 U.S.C. §§ 227(e), 402 (Federal Communications Commission); 29 U.S.C. § 160(f) (National Labor Relations Board); 5 U.S.C. § 7703(b)(1)(A) (Merit Systems Protection Board); 28 U.S.C. § 2342(4), 42 U.S.C. § 5841(e) (Nuclear Regulatory Commission).

litigant asserting such a challenge to proceed instead to district court—indeed, a challenge to the for-cause removal provisions for the members of the Federal Trade Commission was brought in district court and is now pending in the Ninth Circuit. *See Axon Enterprise, Inc. v. FTC*, 452 F. Supp. 3d 882, 902 (D. Ariz. 2020) (dismissing under *Thunder Basin* respondent's suit challenging FTC enforcement proceeding based on the removal restrictions of the ALJ and the FTC Commissioners), *on appeal* No. 20-15662 (9th Cir.). If plaintiff's rule were correct, then nearly "[e]very person hoping to enjoin an ongoing administrative proceeding" could sue in district court to allege that the proceedings were unconstitutional. *Bebo*, 799 F.3d at 775.

Congress would not have created a multitude of statutory schemes like the Exchange Act to vest judicial review of agency proceedings in the courts of appeals if vast swaths of those proceedings could face immediate motions for preliminary injunction in district court as soon as they began. And nothing in the Constitution requires a court to override that congressional judgment about how best to structure judicial review of those claims.

**2.** Plaintiff's theory lacks a sound doctrinal foundation. This Court's decision in *Bank of Louisiana*, and the decisions of other circuits discussed above, make clear that "structural" constitutional challenges are not exempt from the statutory review schemes established by Congress. The question is not whether the plaintiff has raised a meritorious Appointments Clause challenge, *Bennett*, 844 F.3d at 177-78, a removal challenge, *Bebo*, 799 F.3d 768, a due process claim, *Jarkesy*, 803 F.3d at 14, or a First

Amendment claim, *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1279-80 (11th Cir. 2015).  The only question is whether those claims can be raised and addressed within the statutory framework, or in district court proceedings not within the contemplation of those schemes.  Because plaintiff's "constitutional challenges are essentially objections to forthcoming [SEC] orders," they "fall within the fairly discernable scope of § 78y's review procedures."  *Hill*, 825 F.3d at 1243.

*Elgin* declined to carve out any exception to the general rule that statutory schemes can encompass all kinds of constitutional claims, even facial challenges to statutes.  567 U.S. at 15.  There is no apparent basis for creating an exception for claims of "structural error," which do not constitute a defined category and carry "no talismanic significance as a doctrinal matter."  *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017).  *See United States v. Hicks*, 958 F.3d 399, 401 (5th Cir. 2020) (recognizing that other courts have characterized some due process violations as "structural, constitutional error").  As the Supreme Court explained, these kinds of distinctions among constitutional claims are "not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Elgin*, 567 U.S. at 15.

After *Elgin*, this Court and the courts of appeals have repeatedly held that due process and Article II challenges to pending enforcement proceedings must be raised under the applicable statutory review scheme.  *See Bank of Louisiana*, 919 F.3d at 921, 930 (due process, equal protection, and separation-of-powers claims); *Bebo*, 799 F.3d

at 768 (same); *Tilton*, 824 F.3d at 279-80 (Article II claims); *Bennett*, 844 F.3d at 177 (same); *Hill*, 825 F.3d at 1239-40 (Article II, non-delegation, and Seventh Amendment claims); *Jarkesy*, 803 F.3d at 14 (due process and equal protection claims).

Plaintiff asserts that appearing before an ALJ with unconstitutional removal protections will constitute irreparable injury. En Banc Br. 23. But the same argument can be asserted for other constitutional claims, like due process claims or separation-of-powers claims based on the Appointments Clause. And that argument ignores the fact that such claims can and have been remedied under the Exchange Act's review scheme. The petitioners in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), for instance, raised an Article II Appointments Clause challenge to an ALJ before the Commission and to the D.C. Circuit under 15 U.S.C. § 78y, and they were able to prevail and secure a new hearing before a different, properly appointed ALJ. Other respondents were similarly able to obtain meaningful relief. *See, e.g.*, *Bandimere v. SEC*, 844 F.3d 1168, 1188 (10th Cir. 2016) (vacating Commission order based on Appointments Clause violation).

Plaintiff is wrong that her specific challenge to the ALJ's removal restrictions is somehow different. Removal restrictions can and have been challenged in agency proceedings, and the courts of appeals have been able to provide relief when warranted. For instance, on petition for review of a final decision of the Consumer Financial Protection Bureau, a panel of the D.C. Circuit held that the CFPB Director's removal restrictions were unconstitutional and must be severed. *PHH Corp. v. CFPB*, 839 F.3d 1, 12, 37-38 (D.C. Cir. 2016), *rev'd en banc* 881 F.3d 75 (D.C. Cir. 2018). The

petitioners in *Jarkesy v. SEC*, No. 20-61007 (5th Cir.), are likewise seeking relief on review of a final Commission order. Moreover, the Commission has authority to remedy plaintiff's removal challenge. Indeed, plaintiff has explicitly requested the Commission to provide her "the appropriate remedy" by "refer[ring] this matter for trial before an appropriate member of the Commission." Resp. Mot. 26, *In re Cochran* (SEC Dec. 31, 2018), https://go.usa.gov/xyKFu. Plaintiff will not face irreparable harm because she can receive a remedy both from the Commission and, if she receives an adverse order, from this Court.

More generally, the Commission has not yet decided whether plaintiff has violated any securities laws. If it determines she has not, she will not suffer any adverse order and will not suffer any irreparable harm. The Supreme Court made that point clear in *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980). There, an oil company sued in district court to enjoin an FTC proceeding, arguing that the entire proceeding was unlawful and based on impermissible political pressure. *Id.* at 235. The company—like plaintiff (En Banc Br. 23)—argued that "it will be irreparably harmed unless the [FTC's] issuance of the [administrative] complaint is judicially reviewed immediately." *Standard Oil*, 449 U.S. at 244.

The Supreme Court affirmed dismissal of the complaint, rejecting the company's contention that immediate district court review was necessary because otherwise the allegedly unlawful proceeding "would be 'insulated' from review * * * if [the company] prevailed in the adjudication." *Standard Oil*, 449 U.S. at 244 n.11; *see* En

Banc Br. 23 (making the same argument). Instead, the Court explained that "one of the principal reasons to await the termination of agency proceedings is 'to obviate all occasion for judicial review.'" *Standard Oil*, 449 U.S. 244 n.11. Thus, the chance that plaintiff might win her proceeding on the merits and her removal "challenge may be mooted in adjudication *warrants* the requirement that [she] pursue adjudication, not shortcut it." *Id.* (emphasis added). *See also Jarkesy*, 803 F.3d at 27 (quoting from this portion of *Standard Oil* in holding that the plaintiffs must complete their Commission proceedings before bringing their constitutional claims). The *Jarkesy* plaintiffs followed that directive, and have now properly sought judicial review in this Court to press their removal challenges. *Jarkesy v. SEC*, No. 20-61007 (5th Cir.).

Plaintiff at times appears to argue that the entire enforcement proceeding against her is infected with constitutional error. En Banc Br. 18-19. But that is inconsistent with the scope of her complaint. Plaintiff has presented no challenge to the Commission's statutory authority to institute an enforcement proceeding against her under 15 U.S.C. §§ 78d-3, 78u-3, or to determine whether she should be authorized to continue practicing before the Commission, *id.* § 78d-3(a). And plaintiff has asked the Commission to remedy her alleged constitutional violation by continuing the proceeding and assigning it to a member of the Commission instead of the ALJ. There is no way that the entirety of the enforcement proceeding is unlawful or *ultra vires* based on her separation-of-powers claim. At most, her claim would require assigning the matter to a different adjudicator or conducting the proceeding

with an ALJ whose removal restrictions had been invalidated by a court with proper jurisdiction.

If a respondent in a Commission proceeding needed to seek immediate judicial review, she could file a mandamus petition in the court of appeals. *See Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 75-77 (D.C. Cir. 1984) (considering mandamus challenge to pending agency proceedings). Plaintiff here has not attempted to do so, and she has not argued that she meets the standards for mandamus. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011) (mandamus appropriate "when (1) the plaintiff has a clear right to relief, (2) the defendant a clear duty to act, and (3) no other adequate remedy exists").

Plaintiff also argues that she can bring *any* kind of claim based on federal law in district court to enjoin a Commission proceeding. En Banc Br. 47 (arguing that "nothing in § 78y ousts [district court] jurisdiction" over claims that would otherwise fall under federal-question jurisdiction in "28 U.S.C. § 1331"). On that view, a respondent in a Commission proceeding could sue in district court asking for a declaratory judgment that she has not violated the securities laws. *Thunder Basin* rejected that argument under a virtually identical scheme. 510 U.S. at 209 (explaining that the Mine Act "empower[s] the *Secretary* to" bring district court actions, while "[m]ine operators enjoy no corresponding right but are to complain to the Commission and then to the court of appeals"). And all members of the panel agreed that some constitutional claims can be channeled through Commission proceedings to

the courts of appeals. *See Cochran*, 969 F.3d at 510 (majority op.); *id.* at 518 & n.1

(Haynes, J., dissenting in part).

## II.  PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION

Principles of ripeness confirm that plaintiff can seek review only of a final

decision of the Commission.  Because the district court dismissed plaintiff's complaint

in light of the exclusive statutory review scheme in 15 U.S.C. § 78y, it did not reach

the question of whether it lacked jurisdiction because plaintiff's claims were not yet

ripe, and this Court likewise need not reach the issue.  The ripeness analysis confirms,

however, that plaintiff can seek review only of a final Commission determination.

The Commission argued ripeness below, ROA.245-47, and this Court can affirm the

district court's decision on ripeness grounds, *Boerschig v. Trans-Pecos Pipeline, LLC*, 872

F.3d 701, 706 (5th Cir. 2017).

Ripeness "is a justiciability doctrine designed to prevent the courts, through

avoidance of premature adjudication, from entangling themselves in abstract

disagreements over administrative policies, and also to protect the agencies from

judicial interference until an administrative decision has been formalized and its

effects felt in a concrete way by the challenging parties." *National Park Hosp. Ass'n v.

Department of the Interior,* 538 U.S. 803, 807-08 (2003) (quotation marks omitted).  This

Court has explained that a challenge to an agency's ongoing administrative proceeding

is not ripe for review until the proceeding has concluded. *Energy Transfer Partners, L.P.*

*v. Federal Energy Regulatory Comm'n,* 567 F.3d 134, 136 (5th Cir. 2009); *Total Gas &*
*Power N. Am., Inc. v. Federal Energy Regulatory Comm'n,* 859 F.3d 325, 327 (5th Cir. 2017).

In *Energy Transfer Partners,* 567 F.3d at 136-37, a company challenged the
statutory authority of an ALJ of the Federal Energy Regulatory Commission (FERC)
to determine whether the company had violated the Natural Gas Act.  Like plaintiff
here, the company argued that "being compelled to participate in an invalid
administrative process is an injury" for which it could seek immediate judicial review.
*Id.* at 138.  This Court dismissed the company's petition for review because its claims
were not ripe for adjudication, but instead could be considered by the court of appeals
after FERC issued a final order.  *Id.* at 138, 146.  The Court explained that while
FERC had initiated administrative proceedings, that alone did not amount to a
"definitive ruling or regulation"—indeed, the company could prevail in the
administrative proceedings and "thereby moot[]" its statutory challenge.  *Id.* at 141.
And while the company argued that "it should not be required to participate in
adversary proceedings before an ALJ," the Court rejected that contention, explaining
that "the expense and annoyance of litigation is part of the social burden of living
under government."  *Id.* (quoting *Standard Oil,* 449 U.S. at 244).

The Court employed the same analysis in *Total Gas* to hold that constitutional
challenges to administrative proceedings were not ripe for adjudication while the
administrative proceedings were ongoing.  859 F.3d at 334-35.  There, plaintiff alleged
that any ALJ assigned to the proceeding would not have been appointed by FERC

and would be serving in violation of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2. *Total Gas*, 859 F.3d at 334. The plaintiff further alleged that the proceedings would violate its Seventh Amendment right to a jury trial, and its Fifth Amendment right to due process. *Id.* The Court held that these claims were not yet ripe for adjudication, and that the plaintiff could properly receive judicial review "[i]f and when FERC conclusively determines that Total has violated the [Natural Gas Act] and imposes civil penalties against it." *Id.* at 335. In the ongoing administrative proceedings, it was "possible that the ALJ [would rule] in Total's favor or, if not, that FERC [would reject] the ALJ's initial order." *Id.* at 336. Without a final, adverse order from the agency, the asserted constitutional claims "rest[ed] on a series of contingencies" and were "not a certainty." *Id.* at 337.

By the same reasoning, plaintiff's constitutional challenges to her pending administrative proceeding are not yet ripe. The Commission has not determined whether plaintiff is liable, and accordingly has not yet imposed any sanction on plaintiff. If the Commission does impose a sanction, plaintiff can seek judicial review at that time. 15 U.S.C. § 78y(a)(1). Alternatively, plaintiff may prevail on the merits and suffer no sanction—further demonstrating that her claims are not yet ripe because they rest "on a series of contingencies and [are] not a certainty." *Total Gas*, 859 F.3d at 337; *see also Louisiana Real Estate Appraisers Bd. v. FTC*, 976 F.3d 597, 605 n.7 (5th Cir. 2020) (recognizing an agency's "denial of state action immunity will affect the [plaintiff] adversely only if the [agency] ultimately finds the [plaintiff] liable").

And while plaintiff may prefer judicial review now rather than waiting until the completion of administrative proceedings, that preference is not an irreparable injury that can satisfy ripeness. *Total Gas*, 859 F.3d at 338 (defending oneself in administrative proceedings "cannot constitute sufficient hardship for ripeness"); *see also Hill*, 825 F.3d at 1245 ("Enduring an unwanted administrative process, even at great cost, does not amount to an irreparable injury on its own."). This Court, instead, has correctly required litigants in plaintiff's position "to bring these claims if and when [the agency] issues a final adverse order." *Total Gas*, 859 F.3d at 337.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

JEFFREY BOSSERT CLARK
*Acting Assistant Attorney General*

ERIN NEALY COX
*United States Attorney*

MARK B. STERN
JOSHUA M. SALZMAN
*/s/ Daniel Aguilar*
DANIEL AGUILAR
AMANDA L. MUNDELL
*Attorneys, Appellate Staff*
*Civil Division, Room 7266*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-5432*
Daniel.J.Aguilar@usdoj.gov

December 2020

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2020, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel Aguilar*
Daniel Aguilar

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,408 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Daniel Aguilar*
Daniel Aguilar

# ADDENDUM

# TABLE OF CONTENTS

15 U.S.C. § 78d-1 ...................................................................Add. 1

15 U.S.C. § 78d-3 ...................................................................Add. 2

15 U.S.C. § 78u-3 ...................................................................Add. 2

15 U.S.C. § 78y .......................................................................Add. 6

17 C.F.R. § 200.30-9 ..............................................................Add. 9

17 C.F.R. § 201.360 ..............................................................Add. 10

17 C.F.R. § 201.411 ..............................................................Add. 13

# 15 U.S.C. § 78d-1.  Delegation of functions by the Commission

(a) Authorization; functions delegable; eligible persons; application of other laws

In addition to its existing authority, the Securities and Exchange Commission shall have the authority to delegate, by published order or rule, any of its functions to a division of the Commission, an individual Commissioner, an administrative law judge, or an employee or employee board, including functions with respect to hearing, determining, ordering, certifying, reporting, or otherwise acting as to any work, business, or matter. Nothing in this section shall be deemed to supersede the provisions of section 556(b) of Title 5, or to authorize the delegation of the function of rulemaking as defined in subchapter II of chapter 5 of Title 5, with reference to general rules as distinguished from rules of particular applicability, or of the making of any rule pursuant to section 78s(c) of this title.

(b) Right of review; procedure

With respect to the delegation of any of its functions, as provided in subsection (a) of this section, the Commission shall retain a discretionary right to review the action of any such division of the Commission, individual Commissioner, administrative law judge, employee, or employee board, upon its own initiative or upon petition of a party to or intervenor in such action, within such time and in such manner as the Commission by rule shall prescribe. The vote of one member of the Commission shall be sufficient to bring any such action before the Commission for review. A person or party shall be entitled to review by the Commission if he or it is adversely affected by action at a delegated level which (1) denies any request for action pursuant to section 77h(a) or section 77h(c) of this title or the first sentence of section 78l(d) of this title; (2) suspends trading in a security pursuant to section 78l(k) of this title; or (3) is pursuant to any provision of this chapter in a case of adjudication, as defined in section 551 of Title 5, not required by this chapter to be determined on the record after notice and opportunity for hearing (except to the extent there is involved a matter described in section 554(a)(1) through (6) of such Title 5).

(c) Finality of delegated action

If the right to exercise such review is declined, or if no such review is sought within the time stated in the rules promulgated by the Commission, then the action of any such division of the Commission, individual Commissioner, administrative law judge, employee, or employee board, shall, for all purposes, including appeal or review thereof, be deemed the action of the Commission.

## 15 U.S.C. § 78d-3.  Appearance and practice before the Commission

(a) Authority to censure

The Commission may censure any person, or deny, temporarily or permanently, to any person the privilege of appearing or practicing before the Commission in any way, if that person is found by the Commission, after notice and opportunity for hearing in the matter--

> (1) not to possess the requisite qualifications to represent others;

> (2) to be lacking in character or integrity, or to have engaged in unethical or improper professional conduct; or

> (3) to have willfully violated, or willfully aided and abetted the violation of, any provision of the securities laws or the rules and regulations issued thereunder.

(b) Definition

With respect to any registered public accounting firm or associated person, for purposes of this section, the term "improper professional conduct" means--

> (1) intentional or knowing conduct, including reckless conduct, that results in a violation of applicable professional standards; and

> (2) negligent conduct in the form of--

>> (A) a single instance of highly unreasonable conduct that results in a violation of applicable professional standards in circumstances in which the registered public accounting firm or associated person knows, or should know, that heightened scrutiny is warranted; or

>> (B) repeated instances of unreasonable conduct, each resulting in a violation of applicable professional standards, that indicate a lack of competence to practice before the Commission.

## 15 U.S.C. § 78u-3.  Cease-and-desist proceedings.

(a) Authority of Commission

If the Commission finds, after notice and opportunity for hearing, that any person is violating, has violated, or is about to violate any provision of this chapter, or any rule or regulation thereunder, the Commission may publish its findings and enter an order requiring such person, and any other person that is, was, or would be a cause of the violation, due to an act or omission the person knew or should have known would contribute to such violation, to cease and desist from committing or causing such violation and any future violation of the same provision, rule, or regulation. Such

order may, in addition to requiring a person to cease and desist from committing or causing a violation, require such person to comply, or to take steps to effect compliance, with such provision, rule, or regulation, upon such terms and conditions and within such time as the Commission may specify in such order. Any such order may, as the Commission deems appropriate, require future compliance or steps to effect future compliance, either permanently or for such period of time as the Commission may specify, with such provision, rule, or regulation with respect to any security, any issuer, or any other person.

(b) Hearing

The notice instituting proceedings pursuant to subsection (a) shall fix a hearing date not earlier than 30 days nor later than 60 days after service of the notice unless an earlier or a later date is set by the Commission with the consent of any respondent so served.

(c) Temporary order

(1) In general

Whenever the Commission determines that the alleged violation or threatened violation specified in the notice instituting proceedings pursuant to subsection (a), or the continuation thereof, is likely to result in significant dissipation or conversion of assets, significant harm to investors, or substantial harm to the public interest, including, but not limited to, losses to the Securities Investor Protection Corporation, prior to the completion of the proceedings, the Commission may enter a temporary order requiring the respondent to cease and desist from the violation or threatened violation and to take such action to prevent the violation or threatened violation and to prevent dissipation or conversion of assets, significant harm to investors, or substantial harm to the public interest as the Commission deems appropriate pending completion of such proceedings. Such an order shall be entered only after notice and opportunity for a hearing, unless the Commission determines that notice and hearing prior to entry would be impracticable or contrary to the public interest. A temporary order shall become effective upon service upon the respondent and, unless set aside, limited, or suspended by the Commission or a court of competent jurisdiction, shall remain effective and enforceable pending the completion of the proceedings.

(2) Applicability

Paragraph (1) shall apply only to a respondent that acts, or, at the time of the alleged misconduct acted, as a broker, dealer, investment adviser, investment company, municipal securities dealer, government securities broker, government securities dealer, registered public accounting firm (as defined in

section 7201 of this title), or transfer agent, or is, or was at the time of the alleged misconduct, an associated person of, or a person seeking to become associated with, any of the foregoing.

(3) Temporary freeze

> (A) In general

>> (i) Issuance of temporary order

>> Whenever, during the course of a lawful investigation involving possible violations of the Federal securities laws by an issuer of publicly traded securities or any of its directors, officers, partners, controlling persons, agents, or employees, it shall appear to the Commission that it is likely that the issuer will make extraordinary payments (whether compensation or otherwise) to any of the foregoing persons, the Commission may petition a Federal district court for a temporary order requiring the issuer to escrow, subject to court supervision, those payments in an interest-bearing account for 45 days.

>> (ii) Standard

>> A temporary order shall be entered under clause (i), only after notice and opportunity for a hearing, unless the court determines that notice and hearing prior to entry of the order would be impracticable or contrary to the public interest.

>> (iii) Effective period

>> A temporary order issued under clause (i) shall--

>>> (I) become effective immediately;

>>> (II) be served upon the parties subject to it; and

>>> (III) unless set aside, limited or suspended by a court of competent jurisdiction, shall remain effective and enforceable for 45 days.

>> (iv) Extensions authorized

>> The effective period of an order under this subparagraph may be extended by the court upon good cause shown for not longer than 45 additional days, provided that the combined period of the order shall not exceed 90 days.

> (B) Process on determination of violations

(i) Violations charged

If the issuer or other person described in subparagraph (A) is charged with any violation of the Federal securities laws before the expiration of the effective period of a temporary order under subparagraph (A) (including any applicable extension period), the order shall remain in effect, subject to court approval, until the conclusion of any legal proceedings related thereto, and the affected issuer or other person, shall have the right to petition the court for review of the order.

(ii) Violations not charged

If the issuer or other person described in subparagraph (A) is not charged with any violation of the Federal securities laws before the expiration of the effective period of a temporary order under subparagraph (A) (including any applicable extension period), the escrow shall terminate at the expiration of the 45-day effective period (or the expiration of any extension period, as applicable), and the disputed payments (with accrued interest) shall be returned to the issuer or other affected person.

(d) Review of temporary orders

(1) Commission review

At any time after the respondent has been served with a temporary cease-and-desist order pursuant to subsection (c), the respondent may apply to the Commission to have the order set aside, limited, or suspended. If the respondent has been served with a temporary cease-and-desist order entered without a prior Commission hearing, the respondent may, within 10 days after the date on which the order was served, request a hearing on such application and the Commission shall hold a hearing and render a decision on such application at the earliest possible time.

(2) Judicial review

Within--

(A) 10 days after the date the respondent was served with a temporary cease-and-desist order entered with a prior Commission hearing, or

(B) 10 days after the Commission renders a decision on an application and hearing under paragraph (1), with respect to any temporary cease-and-desist order entered without a prior Commission hearing,

the respondent may apply to the United States district court for the district in which the respondent resides or has its principal place of business, or for the District of Columbia, for an order setting aside, limiting, or suspending the effectiveness or enforcement of the order, and the court shall have jurisdiction to enter such an order. A respondent served with a temporary cease-and-desist order entered without a prior Commission hearing may not apply to the court except after hearing and decision by the Commission on the respondent's application under paragraph (1) of this subsection.

(3) No automatic stay of temporary order

The commencement of proceedings under paragraph (2) of this subsection shall not, unless specifically ordered by the court, operate as a stay of the Commission's order.

(4) Exclusive review

Section 78y of this title shall not apply to a temporary order entered pursuant to this section.

(e) Authority to enter order requiring accounting and disgorgement

In any cease-and-desist proceeding under subsection (a), the Commission may enter an order requiring accounting and disgorgement, including reasonable interest. The Commission is authorized to adopt rules, regulations, and orders concerning payments to investors, rates of interest, periods of accrual, and such other matters as it deems appropriate to implement this subsection.

(f) Authority of the Commission to prohibit persons from serving as officers or directors

In any cease-and-desist proceeding under subsection (a), the Commission may issue an order to prohibit, conditionally or unconditionally, and permanently or for such period of time as it shall determine, any person who has violated section 78j(b) of this title or the rules or regulations thereunder, from acting as an officer or director of any issuer that has a class of securities registered pursuant to section 78l of this title, or that is required to file reports pursuant to section 78o(d) of this title, if the conduct of that person demonstrates unfitness to serve as an officer or director of any such issuer.

## 15 U.S.C. § 78y.  Court review of orders and rules

(a) Final Commission orders; persons aggrieved; petition; record; findings; affirmance, modification, enforcement, or setting aside of orders; remand to adduce additional evidence

(1) A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or set aside in whole or in part.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated by the Commission for that purpose. Thereupon the Commission shall file in the court the record on which the order complained of is entered, as provided in section 2112 of Title 28 and the Federal Rules of Appellate Procedure.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.

(4) The findings of the Commission as to the facts, if supported by substantial evidence, are conclusive.

(5) If either party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that the additional evidence is material and that there was reasonable ground for failure to adduce it before the Commission, the court may remand the case to the Commission for further proceedings, in whatever manner and on whatever conditions the court considers appropriate. If the case is remanded to the Commission, it shall file in the court a supplemental record containing any new evidence, any further or modified findings, and any new order.

(b) Commission rules; persons adversely affected; petition; record; affirmance, enforcement, or setting aside of rules; findings; transfer of proceedings

(1) A person adversely affected by a rule of the Commission promulgated pursuant to section 78f, 78i(h)(2), 78k, 78k-1, 78o(c)(5) or (6), 78o-3, 78q, 78q-1, or 78s of this title may obtain review of this rule in the United States Court of Appeals for the circuit in which he resides or has his principal place of business or for the District of Columbia Circuit, by filing in such court, within sixty days after the promulgation of the rule, a written petition requesting that the rule be set aside.

(2) A copy of the petition shall be transmitted forthwith by the clerk of the court to a member of the Commission or an officer designated for that purpose. Thereupon, the Commission shall file in the court the rule under review and any documents referred to therein, the Commission's notice of proposed rulemaking and any documents referred to therein, all written

submissions and the transcript of any oral presentations in the rulemaking, factual information not included in the foregoing that was considered by the Commission in the promulgation of the rule or proffered by the Commission as pertinent to the rule, the report of any advisory committee received or considered by the Commission in the rulemaking, and any other materials prescribed by the court.

(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the materials set forth in paragraph (2) of this subsection, to affirm and enforce or to set aside the rule.

(4) The findings of the Commission as to the facts identified by the Commission as the basis, in whole or in part, of the rule, if supported by substantial evidence, are conclusive. The court shall affirm and enforce the rule unless the Commission's action in promulgating the rule is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or without observance of procedure required by law.

(5) If proceedings have been instituted under this subsection in two or more courts of appeals with respect to the same rule, the Commission shall file the materials set forth in paragraph (2) of this subsection in that court in which a proceeding was first instituted. The other courts shall thereupon transfer all such proceedings to the court in which the materials have been filed. For the convenience of the parties in the interest of justice that court may thereafter transfer all the proceedings to any other court of appeals.

(c) Objections not urged before Commission; stay of orders and rules; transfer of enforcement or review proceedings

(1) No objection to an order or rule of the Commission, for which review is sought under this section, may be considered by the court unless it was urged before the Commission or there was reasonable ground for failure to do so.

(2) The filing of a petition under this section does not operate as a stay of the Commission's order or rule. Until the court's jurisdiction becomes exclusive, the Commission may stay its order or rule pending judicial review if it finds that justice so requires. After the filing of a petition under this section, the court, on whatever conditions may be required and to the extent necessary to prevent irreparable injury, may issue all necessary and appropriate process to stay the order or rule or to preserve status or rights pending its review; but (notwithstanding section 705 of Title 5) no such process may be issued by the court before the filing of the record or the materials set forth in subsection

(b)(2) of this section unless: (A) the Commission has denied a stay or failed to grant requested relief, (B) a reasonable period has expired since the filing of an application for a stay without a decision by the Commission, or (C) there was reasonable ground for failure to apply to the Commission.

(3) When the same order or rule is the subject of one or more petitions for review filed under this section and an action for enforcement filed in a district court of the United States under section 78u(d) or (e) of this title, that court in which the petition or the action is first filed has jurisdiction with respect to the order or rule to the exclusion of any other court, and thereupon all such proceedings shall be transferred to that court; but, for the convenience of the parties in the interest of justice, that court may thereafter transfer all the proceedings to any other court of appeals or district court of the United States, whether or not a petition for review or an action for enforcement was originally filed in the transferee court. The scope of review by a district court under section 78u(d) or (e) of this title is in all cases the same as by a court of appeals under this section.

(d) Other appropriate regulatory agencies

(1) For purposes of the preceding subsections of this section, the term "Commission" includes the agencies enumerated in section 78c(a)(34) of this title insofar as such agencies are acting pursuant to this chapter and the Secretary of the Treasury insofar as he is acting pursuant to section 78o-5 of this title.

(2) For purposes of subsection (a)(4) of this section and section 706 of Title 5, an order of the Commission pursuant to section 78s(a) of this title denying registration to a clearing agency for which the Commission is not the appropriate regulatory agency or pursuant to section 78s(b) of this title disapproving a proposed rule change by such a clearing agency shall be deemed to be an order of the appropriate regulatory agency for such clearing agency insofar as such order was entered by reason of a determination by such appropriate regulatory agency pursuant to section 78s(a)(2)(C) or 78s(b)(4)(C) of this title that such registration or proposed rule change would be inconsistent with the safeguarding of securities or funds.

## 17 C.F.R. § 200.30-9. Delegation of authority to hearing officers.

Pursuant to the provisions of Section 4A of the Securities Exchange Act of 1934 (15 U.S.C. 78d–1), the Securities and Exchange Commission hereby delegates, until the Commission orders otherwise, to each Administrative Law Judge ("Judge") the authority:

(a) To make an initial decision in any proceeding at which the Judge presides in which a hearing is required to be conducted in conformity with the Administrative Procedure Act (5 U.S.C. 557) unless such initial decision is waived by all parties who appear at the hearing and the Commission does not subsequently order that an initial decision nevertheless be made by the Judge, and in any other proceeding in which the Commission directs the Judge to make such a decision; and

(b) To issue, upon entry pursuant to Rule 531 of the Commission's Rules of Practice, § 201.531 of this chapter, of an initial decision on a permanent order, a separate order setting aside, limiting or suspending any temporary sanction, as that term is defined in Rule 101(a)(11) of the Commission's Rules of Practice, § 201.101(a) of this chapter, then in effect in accordance with the terms of the initial decision.

## 17 C.F.R. § 201.360. Initial decision of hearing officer and timing of hearing.

(a)    (1) When required. Unless the Commission directs otherwise, the hearing officer shall prepare an initial decision in any proceeding in which the Commission directs a hearing officer to preside at a hearing, provided, however, that an initial decision may be waived by the parties with the consent of the hearing officer pursuant to § 201.202.

(2) Time period for filing initial decision and for hearing—

(i) Initial decision. In the order instituting proceedings, the Commission will specify a time period in which the hearing officer's initial decision must be filed with the Secretary. In the Commission's discretion, after consideration of the nature, complexity, and urgency of the subject matter, and with due regard for the public interest and the protection of investors, this time period will be either 30, 75, or 120 days. The time period will run from the occurrence of the following events:

(A) The completion of post-hearing briefing in a proceeding where the hearing has been completed; or

(B) The completion of briefing on a § 201.250 motion in the event the hearing officer has determined that no hearing is necessary; or

(C) The determination by the hearing officer that, pursuant to § 201.155, a party is deemed to be in default and no hearing is necessary.

(ii) Hearing. Under the 120-day timeline, the hearing officer shall issue an order scheduling the hearing to begin approximately four months (but no more than ten months) from the date of service of the order instituting the proceeding. Under the 75-day timeline, the hearing officer shall issue an order scheduling the hearing to begin approximately 2 ½ months (but no more than six months) from the date of service of the order instituting the proceeding. Under the 30-day timeline, the hearing officer shall issue an order scheduling the hearing to begin approximately one month (but no more than four months) from the date of service of the order instituting the proceeding. These deadlines confer no substantive rights on respondents. If a stay is granted pursuant to § 201.161(c)(2)(i) or § 201.210(c)(3), the time period specified in the order instituting proceedings in which the hearing officer's initial decision must be filed with the Secretary, as well as any other time limits established in orders issued by the hearing officer in the proceeding, shall be automatically tolled during the period while the stay is in effect.

(3) Certification of extension; motion for extension.

(i) In the event that the hearing officer presiding over the proceeding determines that it will not be possible to file the initial decision within the specified period of time, the hearing officer may certify to the Commission in writing the need to extend the initial decision deadline by up to 30 days for case management purposes. The certification must be issued no later than 30 days prior to the expiration of the time specified for the issuance of an initial decision and be served on the Commission and all parties in the proceeding. If the Commission has not issued an order to the contrary within 14 days after receiving the certification, the extension set forth in the hearing officer's certification shall take effect.

(ii) Either in addition to a certification of extension, or instead of a certification of extension, the Chief Administrative Law Judge may submit a motion to the Commission requesting an extension of the time period for filing the initial decision. First, the hearing officer presiding over the proceeding must consult with the Chief Administrative Law Judge. Following such consultation, the Chief Administrative Law Judge may determine, in his or her discretion, to submit a motion to the Commission requesting an extension of the time period for filing the initial decision. This motion may request an extension of any length but must be filed no later than 15 days prior to the expiration of the time specified in the certification of extension, or if there is no certification of extension, 30 days prior to the expiration of the time specified in the

order instituting proceedings. The motion will be served upon all parties in the proceeding, who may file with the Commission statements in support of or in opposition to the motion. If the Commission determines that additional time is necessary or appropriate in the public interest, the Commission shall issue an order extending the time period for filing the initial decision.

(iii) The provisions of this paragraph (a)(3) confer no rights on respondents.

(b) Content. An initial decision shall include findings and conclusions, and the reasons or basis therefor, as to all the material issues of fact, law or discretion presented on the record and the appropriate order, sanction, relief, or denial thereof. The initial decision shall also state the time period, not to exceed 21 days after service of the decision, except for good cause shown, within which a petition for review of the initial decision may be filed. The reasons for any extension of time shall be stated in the initial decision. The initial decision shall also include a statement that, as provided in paragraph (d) of this section:

(1) The Commission will enter an order of finality as to each party unless a party or an aggrieved person entitled to review timely files a petition for review of the initial decision or a motion to correct a manifest error of fact in the initial decision with the hearing officer, or the Commission determines on its own initiative to review the initial decision; and

(2) If a party or an aggrieved person entitled to review timely files a petition for review or a motion to correct a manifest error of fact in the initial decision with the hearing officer, or if the Commission takes action to review as to a party or an aggrieved person entitled to review, the initial decision shall not become final as to that party or person.

(c) Filing, service and publication. The Secretary shall promptly serve the initial decision upon the parties and shall promptly publish notice of the filing thereof on the SEC website; provided, however, that in nonpublic proceedings no notice shall be published unless the Commission otherwise directs.

(d) Finality.

(1) If a party or an aggrieved person entitled to review timely files a petition for review or a motion to correct a manifest error of fact in the initial decision, or if the Commission on its own initiative orders review of a decision with respect to a party or a person aggrieved who would be entitled to review, the initial decision shall not become final as to that party or person.

(2) If a party or aggrieved person entitled to review fails to file timely a petition for review or a motion to correct a manifest error of fact in the initial decision, and if the Commission does not order review of a decision on its own initiative, the Commission will issue an order that the decision has become final as to that party. The decision becomes final upon issuance of the order. The order of finality shall state the date on which sanctions, if any, take effect. Notice of the order shall be published on the SEC website.

## 17 C.F.R. § 201.411.  Commission consideration of initial decisions by hearing officers.

(a) Scope of review. The Commission may affirm, reverse, modify, set aside or remand for further proceedings, in whole or in part, an initial decision by a hearing officer and may make any findings or conclusions that in its judgment are proper and on the basis of the record.

(b) Standards for granting review pursuant to a petition for review—

(1) Mandatory review. After a petition for review has been filed, the Commission shall review any initial decision that:

(i) Denies any request for action pursuant to Section 8(a) or Section 8(c) of the Securities Act of 1933, 15 U.S.C. 77h(a), (c), or the first sentence of Section 12(d) of the Exchange Act, 15 U.S.C. 78l(d);

(ii) Suspends trading in a security pursuant to Section 12(k) of the Exchange Act, 15 U.S.C. 78l(k); or

(iii) Is in a case of adjudication (as defined in 5 U.S.C. 551) not required to be determined on the record after notice and opportunity for hearing (except to the extent there is involved a matter described in 5 U.S.C. 554(a) (1) through (6)).

(2) Discretionary review. The Commission may decline to review any other decision. In determining whether to grant review, the Commission shall consider whether the petition for review makes a reasonable showing that:

(i) A prejudicial error was committed in the conduct of the proceeding; or

(ii) The decision embodies:

(A) A finding or conclusion of material fact that is clearly erroneous; or

(B) A conclusion of law that is erroneous; or

(C) An exercise of discretion or decision of law or policy that is important and that the Commission should review.

(c) Commission review other than pursuant to a petition for review. The Commission may, on its own initiative, order review of any initial decision, or any portion of any initial decision, within 21 days after the end of the period established for filing a petition for review pursuant to § 201.410(b). A party who does not intend to file a petition for review, and who desires the Commission's determination whether to order review on its own initiative to be made in a shorter time, may make a motion for an expedited decision, accompanied by a written statement that the party waives its right to file a petition for review. The vote of one member of the Commission, conveyed to the Secretary, shall be sufficient to bring a matter before the Commission for review.

(d) Limitations on matters reviewed. Review by the Commission of an initial decision shall be limited to the issues specified in an opening brief that complies with § 201.450(b), or the issues, if any, specified in the briefing schedule order issued pursuant to § 201.450(a). Any exception to an initial decision not supported in an opening brief that complies with § 201.450(b) may, at the discretion of the Commission, be deemed to have been waived by the petitioner. On notice to all parties, however, the Commission may, at any time prior to issuance of its decision, raise and determine any other matters that it deems material, with opportunity for oral or written argument thereon by the parties.

(e) Summary affirmance.

(1) At any time within 21 days after the filing of a petition for review pursuant to § 201.410(b), any party may file a motion in accordance with § 201.154 asking that the Commission summarily affirm an initial decision. Any party may file an opposition and reply to such motion in accordance with § 201.154. Pending determination of the motion for summary affirmance, the Commission, in its discretion, may delay issuance of a briefing schedule order pursuant to § 201.450.

(2) Upon consideration of the motion and any opposition or upon its own initiative, the Commission may summarily affirm an initial decision. The Commission may grant summary affirmance if it finds that no issue raised in the initial decision warrants consideration by the Commission of further oral or written argument. The Commission will decline to grant summary affirmance upon a reasonable showing that a prejudicial error was committed in the conduct of the proceeding or that the decision embodies an exercise of discretion or decision of law or policy that is important and that the Commission should review.

(f) Failure to obtain a majority. In the event a majority of participating Commissioners do not agree to a disposition on the merits, the initial decision shall be of no effect, and an order will be issued in accordance with this result.